[772 NYS2d 251]

Leonia Bank, Now Known as Sampo Bank PLC, Appellant, v Pentti J.K. Kouri et al., Respondents, and Elly Kouri et al., Respondents.

First Department, February 10, 2004

APPEARANCES OF COUNSEL

*White & Case LLP (Daniel P. Goldberg, Michael F. Cicero* and *Jena Tarleton* of counsel), for appellant.

*Lawrence B. Goodman* for Elly Kouri, respondent.

*Allen & Overy (Kenneth S. Rivlin* of counsel), for Boston Safe Deposit & Trust Company, respondent.

*Maritoni Carasig-Carlos* for Bank of New York, respondent.

## OPINION OF THE COURT

SULLIVAN, J.

This is a special proceeding in which Leonia Bank, now known as Sampo Bank plc, a judgment creditor with an unsatisfied $12 million judgment against one Pentti J.K. Kouri, seeks to determine, among other things, adverse claims to a Soho loft, valued in a 1997 appraisal at approximately $6 million, allegedly owned by Mr. Kouri, and to have his interest therein sold to satisfy, in part, its judgment. Leonia appeals from the dismissal of its amended petition.

In 1999, Leonia commenced an action in Supreme Court, New York County, to recover for breach of a guaranty executed by Mr. Kouri in favor of Leonia. On or about September 26, 2000, a judgment in Leonia's favor in the amount of $11,505,444.99, subsequently affirmed by this Court, was entered against Mr. Kouri, no part of which has been satisfied. The judgment, filed with the County Clerk on September 26, 2000, created a lien on all real property in New York County belonging to the judgment debtor, including the Soho loft.

Mr. Kouri currently resides at the Soho loft in units 11 and 26, located within a condominium complex at 114-116 and 118-120 Greene Street (also known as 102-104 Prince Street) in Manhattan. Mr. Kouri and his wife were divorced in 1995 by a judgment that incorporated by reference a separation agreement, executed on July 9, 1993, under which Mr. Kouri undertook, inter alia, certain financial obligations. Pursuant to the terms of the agreement, Mr. Kouri transferred to Mrs. Kouri his interest in the Soho loft, which, as the agreement clearly reflects, was, in fact, intended only as a security device. Article II of the separation agreement provided that Mr. Kouri was

entitled to live in the loft and that he was to pay the monthly maintenance fees and mortgage installments. According to the agreement, Mrs. Kouri was to deliver, on Mr. Kouri's demand, a quitclaim deed surrendering her interest in the loft to Mr. Kouri on or before June 30, 1998, "provided that [he] (1) has made the payment required under Article II, paragraph 1 (a) (ii)," i.e., a $1 million distributive award to Mrs. Kouri, and fulfilled certain other obligations under the agreement.

In 1997, subsequent to the divorce, the Kouris began to dispute their respective rights to the loft, with Mrs. Kouri claiming ownership rights in light of Mr. Kouri's delivery of the deed to her under the separation agreement. Mrs. Kouri moved for authorization to sell the loft. In support of her motion, she submitted an affidavit acknowledging that should the loft be sold, Mr. Kouri's obligations to her for support and other arrears could be paid from the proceeds, with the balance going to Mr. Kouri.

That motion and the dispute over ownership of the loft were resolved by a so-ordered stipulation on the record before the Justice who had presided over the divorce proceeding. In pertinent part, the stipulation provides:

> "[MR. KOURI'S COUNSEL]: [T]he parties agree that the Soho Loft, which has been placed in the name of Elly O. Kouri—in other words, she is the title holder to that condominium, which is a parcel of real estate—*will be placed in Mrs. Kouri's title as collateral for certain obligations listed in the separation agreement, and that subject to the payment of those obligations, the defendant, Pentti Kouri, has the right to either own or direct who the owner of the Soho Loft will be. . . .*

> "[MRS. KOURI'S COUNSEL]: In the event a foreclosure proceeding is commenced with respect to the Soho Loft, Mr. Kouri would be responsible for all costs, legal fees and expenses in connection with that foreclosure proceeding.

> "[MR. KOURI'S COUNSEL]: Yes, I agree with that, with the understanding that *the only reason the loft is currently in Mrs. Kouri's name, is as collateral for the obligations under the separation agreement and the parties agree, and always agreed, and it was the contemplation and intent of the parties at the time of*

*entering into the separation agreement, and they agree now, that following the distribution of the proceeds of the sale of the loft as set forth in this stipulation, the balance will belong to Pentti Kouri.*

"[MRS. KOURI'S COUNSEL]: *That's correct.*" (Emphasis added.)

In an affirmation submitted in subsequent litigation in that proceeding, Mrs. Kouri's counsel attested that she "currently holds title to the loft as collateral for certain obligations pursuant to an Agreement of Separation . . . executed on July 9, 1993."

During her deposition in the instant proceeding, Mrs. Kouri acknowledged that the purpose of her 1997 motion for permission to sell the loft was to obtain the necessary funds to satisfy her former husband's obligations under the separation agreement. On the cross motion to dismiss that is the subject of this appeal, Mrs. Kouri continued to assert that the deed was intended to serve as security to ensure that Mr. Kouri met his obligations under the separation agreement; she referred to the Soho loft as "the sole asset securing these obligations."

■ The amended petition seeks, inter alia, a declaration that Mr. Kouri is the owner of the Soho loft and that Mrs. Kouri's interest is limited to that of a mortgagee as well as an order directing the sheriff to sell the loft and other property to satisfy Leonia's judgment against Pentti. In cross-moving, pre-answer, to dismiss pursuant to CPLR 3211 (a) (1) and (7), Mrs. Kouri asserted two grounds: that she owns the Soho loft outright; and that by trying to reach Mr. Kouri's interest in the loft, Leonia is somehow seeking to modify the Kouris' separation agreement and judgment of divorce. Supreme Court granted the motion, finding that because Mrs. Kouri received a document entitled "deed," rather than "mortgage," there was a conveyance, making her the fee owner of the loft; furthermore, under the terms of the judgment of divorce, even if the deed served only as a security interest at the outset, Mrs. Kouri acquired actual ownership of the loft when Mr. Kouri defaulted under the separation agreement by failing to satisfy his obligations thereunder by June 30, 1998, the date referenced therein. Since the motion court erred on both counts and its decision is contrary to controlling law and the record, we reverse.

It is well settled that the giving of a deed to secure a debt, in whatever form and however structured, creates nothing more

than a mortgage. "A deed conveying real property, which, by any other written instrument, appears to be intended only as a security in the nature of a mortgage, although an absolute conveyance in terms, must be considered a mortgage; and the person for whose benefit such deed is made, derives no advantage from the recording thereof, unless every writing, operating as a defeasance of the same, or explanatory of its being desired to have the effect only of a mortgage, or conditional deed, is also recorded therewith, and at the same time" (Real Property Law § 320). Significantly, the statute does not require a conclusive showing that the transfer was intended as security; it is sufficient that the conveyance "appears to be" intended only as a security in the nature of a mortgage.

Section 320 codifies the common law as enunciated in cases for over a century. "It is an established doctrine that a court of equity will treat a deed, absolute in form, as a mortgage, when it is executed as security for a loan of money" (*Peugh v Davis*, 96 US 332, 336 [1877]; *Mooney v Byrne*, 163 NY 86, 91 [1900] ["The facts agreed upon show that there was a mortgage; for a deed, although absolute on its face, when given as security only, is a mortgage by operation of law"]; *Hughes v Harlam*, 166 NY 427, 432 [1901]; *see Finkenberg v Levinson*, 192 App Div 1 [1920]).

Contrary to Supreme Court's reasoning, the cases are clear in their holding that the receipt of a document entitled "deed," rather than "mortgage," does not alter the effect of the instrument. Similarly, that pursuant to the separation agreement Mr. Kouri was required to pay an indebtedness under the agreement by a day certain, June 30, 1998, does not change the nature of Mrs. Kouri's interest. Where a deed has been given as security, it cannot be turned into a conditional sale by way of an agreement to reconvey (*Mooney v Byrne, supra,* 163 NY at 92). "[T]he courts are steadfast in holding that a conveyance, whatever its form, if in fact given to secure a debt, is neither an absolute nor a conditional sale, but a mortgage, and that the grantor and grantee have merely the rights and are subject only to the obligations of mortgagor and mortgagee" (*id.* at 93). Significantly, as noted, in a post-June 1998 submission to the court, Mrs. Kouri argued that the deed continued to function as a security device only.

The holder of a deed given as security must proceed in the same manner as any other mortgagee—by foreclosure and sale—to extinguish the mortgagor's interest (*see e.g. Gioia v*

*Gioia,* 234 AD2d 588 [1996], *lv denied* 89 NY2d 814 [1997]; *Goldblatt v Iris Constr. Corp.*, 28 Misc 2d 621, 622 [1960]; 77 NY Jur 2d, Mortgages and Deeds of Trust § 32 ["one who has taken an absolute deed as security must, in order to foreclose the debtor's right to redeem, institute a foreclosure proceeding"]). *Gioia* is illustrative of the point. There, in settlement of a matrimonial action, the husband agreed to pay the wife $55,000 and, to secure certain of his obligations, executed a mortgage in favor of the wife and a deed conveying to the wife all of his interest in the marital residence, to be held in escrow. The parties agreed that if the husband defaulted on his payment obligation, the wife could either foreclose on the mortgage or "immediately record the deed in lieu of foreclosure" (234 AD2d at 588). When the husband defaulted, the wife argued, as Mrs. Kouri does here, that she was the owner of the real property based on the husband's default. Rejecting this argument, the Second Department held that the "deed executed by the [husband] was intended to serve as security for his obligations under the stipulation and not as an absolute conveyance of the property" (*id.* at 589). The Court agreed with the husband that the wife could not "acquire title to the property by recording the deed" (*id.* at 588), which, the Court held, "constituted a mortgage and the [wife] must proceed by foreclosure despite the terms of the parties' stipulation" (*id.* at 589).

Similarly, in *Basile v Erhal Holding Corp.* (148 AD2d 484 [1989], *lv denied* 75 NY2d 701 [1989]), the parties entered into a stipulation of settlement whereby the plaintiff agreed to execute a mortgage in favor of the defendant together with a deed that would not be recorded as long as the mortgage conditions were satisfied. The plaintiff subsequently defaulted and the defendant recorded the deed. Rejecting the argument that the plaintiff had waived her right of redemption, the Court held that a "deed conveying real property, although absolute on its face, will be considered to be a mortgage when the instrument is executed as security for a debt" (*id.* at 485). Here, it is beyond dispute that the Kouris intended the deed to the Soho loft to act as security and not to effect a conveyance. In such circumstance, Mrs. Kouri is only a mortgagee who, had she wanted to take title to the loft, would have had to foreclose. She did not. Her only response to the holding of *Gioia* and *Basile* is to point out that in both cases, separate and apart from the deeds, mortgages were also executed. Nothing in the reasoning of those cases, however, relied on this fact. Thus, the distinction is of no moment.

■ In addition to the dispositive statutory provision and case law as to the creation of only a security interest for Mrs. Kouri in the Soho loft, various principles of estoppel also bar her claim to ownership. In the parties' on-the-record stipulation before the same Supreme Court Justice who had presided over their divorce, they agreed that the "only reason" title to the Soho loft was in Mrs. Kouri's name was "as collateral" for Mr. Kouri's "obligations under the separation agreement." This stipulation resolved the postdivorce litigation between the parties as to Mrs. Kouri's status as a mortgagee, and by virtue of collateral estoppel bars her present claim that she owns the loft (*see D'Arata v New York Cent. Mut. Fire Ins. Co.*, 76 NY2d 659, 664 [1990] [collateral estoppel requires showing that "the identical issue was necessarily decided in the prior action and is decisive in the present action," and that "the party to be precluded from relitigating an issue must have had a full and fair opportunity to contest the prior determination"]; *Kaufman v Eli Lilly & Co.*, 65 NY2d 449, 455 [1985]).

Judicial estoppel also precludes Mrs. Kouri from disavowing the positions she has taken in her earlier litigation disputes, especially the 1998 so-ordered stipulation on the record (*see All Terrain Props. v Hoy*, 265 AD2d 87, 93 [2000] ["judicial estoppel . . . 'precludes a party who assumed a certain position in a prior legal proceeding and who secured a judgment in his or her favor from assuming a contrary position in another action simply because his or her interests have changed' . . . The doctrine 'rests upon the principle that a litigant "should not be permitted . . . to lead a court to find a fact one way and then contend in another judicial proceeding that the same fact should be found otherwise" ']).

To the extent that the court may have credited Mrs. Kouri's arguments that the stipulation was entered into before the June 30, 1998 date contained in the separation agreement, after which, according to Mrs. Kouri, her interest ripened into absolute ownership, it is noted that the case law is clear that the parties cannot circumvent the requirement of a mortgage foreclosure by agreeing that a security interest in real property will be transformed into legal title in the event the obligation secured by the property is not satisfied. As the cases show, the only way the obligor owner's interest can be extinguished is through foreclosure, which has not happened here. Also, and significantly, Mrs. Kouri's arguments and Supreme Court's apparent finding are belied by the record. Mrs. Kouri described

the arrangement as a security device long after the June 30, 1998 deadline for the payment of Mr. Kouri's divorce judgment obligations. Furthermore, it is worthy of note that in an affirmation filed after September 22, 1998, Mrs. Kouri's counsel stated that she held "the loft as collateral" for certain obligations under the separation agreement, a statement that constitutes an informal judicial admission (see Michigan Natl. Bank-Oakland v American Centennial Ins. Co., 89 NY2d 94, 103 [1996]) that, although not conclusive, is inconsistent with the claim that her security interest was somehow converted into legal title by the passing of a deadline.

Supreme Court's suggestion that Leonia sought to have the court alter the terms of the separation agreement, incorporated into the judgment of divorce, hardly requires comment. Rather than alter the judgment, Leonia's position in this proceeding—that the deed was given to secure Mr. Kouri's obligations under the separation agreement—is entirely consistent with the judgment, which provided Mrs. Kouri with a security interest in the Soho loft. It is Mrs. Kouri who is attempting to alter the judgment of divorce. Nor is there any merit to Mrs. Kouri's claim, raised for the first time on appeal, that she received the deed to the Soho loft as part of her distributive share of the marital estate. This claim is flatly refuted by the express terms of the separation agreement, which unequivocally provides that Mrs. Kouri's equitable share of the marital property was the "amount of Three Million Dollars ($3,000,000) (the 'Settlement Amount'), payable in two installments," the payments of which "are fixed, single, absolute, noncontingent and nonperiodic and made as and for a property settlement and equitable distribution of marital property." It is unchallenged that Mrs. Kouri accepted the Settlement Amount as the totality of her distributive award. And, as the judgment of divorce makes clear, the distribution was in "full and complete satisfaction of all claims [sic] either party." Thus, not only was the Soho loft excluded from Mrs. Kouri's equitable share of the marital estate, but she relinquished any ownership rights therein when she agreed to the Settlement Amount.

Finally, we note that Boston Safe Deposit and Trust Company (BSDT), a party respondent, has submitted a respondent's brief arguing that its mortgage, obtained solely from Mrs. Kouri in 1996, has priority over Leonia's judgment lien. This issue, as well as Mrs. Kouri's appellate claim that if she is a mortgagee, she has priority over Leonia, which she never raised on her

cross motion, was never considered by Supreme Court and presents issues that are not before this Court.

Since Mrs. Kouri, who never sought leave to interpose an answer, raises only a legal defense to the petition, which is deficient, and there are no unresolved factual issues as to the ownership of the subject premises, Leonia is entitled to a determination that Mr. Kouri is the owner of the Soho loft without the necessity of an answer to the petition (*see* CPLR 404 [a]; *Matter of Targee St. Internal Med. Group P.C. Profit Sharing Trust v Nationwide Assoc.*, 300 AD2d 497 [2002]; *Matter of Dodge*, 25 NY2d 273, 286-287 [1969]).

Accordingly, the order of the Supreme Court, New York County (Karla Moskowitz, J.), entered on or about March 24, 2003, which, inter alia, granted the cross motion of respondent Elly Kouri to dismiss the amended petition of Leonia Bank with respect to the subject real property, should be reversed, on the law, with costs and disbursements, the petition reinstated and thereupon granted to the extent of declaring that Pentti J.K. Kouri is the owner of the subject property, and that such ownership interest is subject to petitioner's judgment lien, and the matter remanded for further proceedings.

ANDRIAS, J.P., SAXE, ROSENBERGER and MARLOW, JJ., concur.

Order, Supreme Court, New York County, entered on or about March 24, 2003, reversed, on the law, with costs and disbursements, the petition reinstated and thereupon granted to the extent of declaring that Pentti J.K. Kouri is the owner of the subject property, and that such ownership interest is subject to petitioner's judgment lien, and the matter remanded for further proceedings.