In an action, inter alia, to set aside a deed to certain real property on the ground that it was security for a usurious mortgage, the intervenor-defendant appeals, as limited by its brief, from so much of a judgment of the Supreme Court, Westchester County (Scheinkman, J.), dated June 22, 2011, as, upon a decision of the same court entered April 19, 2011, made after a nonjury trial, declared that the deed is null and void, and dismissed its cross claims.
Ordered that the judgment is affirmed insofar as appealed from, with one bill of costs payable to the respondents appearing separately and filing separate briefs.
In 1993, Riccardo Tedesco owned property in Ossining (hereinafter the property). In 1993 or 1994, Jerry Bouffard purchased the property and held it on Tedesco’s behalf because Tedesco was facing foreclosure. Bouffard financed this purchase with a mortgage in the sum of approximately $209,000.
In 2004, Tedesco wanted to borrow money to finance a business venture. Since he was unable to obtain conventional financing, Tedesco approached Rego DiPietro, who referred Tedesco to Jeff Reback, a “hard money lender.” Acting through his uncle, David Reback, Jeff Reback, on behalf of his company JR Factors, Inc., agreed to lend Tedesco $175,000 in return for a mortgage on the subject property. In May 2004, Bouffard and Tedesco appeared at David Reback’s office and Bouffard executed the loan documents creating the mortgage. Tedesco did not repay the principal of this loan.
In August 2004, Tedesco determined that he needed an additional $200,000 to invest in his business venture. He again approached Rego DiPietro, who again contacted Jeff Reback. However, because he estimated that the subject property was worth only approximately $500,000 and was already encumbered by approximately $385,000 in debt, Jeff Reback was unwilling *867 to extend further mortgage-based financing. Instead, acting through David Reback and Rego DiPietro, Jeff Reback proposed that another company he owned, Befese, LLC (hereinafter Befese), would purchase the property for $200,000, take the deed to the property, and enter into an option agreement permitting Bouffard and Tedesco to repurchase the property within 90 days at an option price of $220,000. At trial, Jeff Reback admitted that he offered these terms because he wished to avoid the foreclosure process if Tedesco defaulted on the loan. Tedesco accepted these terms and, on August 4, 2004, Bouffard attended a closing at David Reback’s office and signed both the deed and the option agreement. Befese accepted the deed, but did not record it at that time and did not take physical control of the property. Tedesco and Bouffard failed to repurchase the property within the 90-day option period or during two subsequent extensions which Jeff Reback offered in exchange for an increased option payment. Befese never commenced a foreclosure action relating to the subject property.
In September 2005, Befese sold the subject property to Francisco Ippoliti. Ippoliti, who intended to develop the property, then entered into a partnership with Rego DiPietro’s son, Frank DiPietro. However, on December 5, 2005, Ippoliti conveyed the deed from himself to himself and Frank DiPietro, and, on the same day, Ippoliti and Frank Dipietro conveyed the deed to Hawkes Crossing, LLC (hereinafter Hawkes Crossing). Hawkes Crossing was an entity controlled by James Zappi. Zappi owned property adjoining the property and had previously negotiated with Tedesco and Rego DiPietro about acquiring the property so that he could develop the two parcels together.
In 2006, Bouffard, Tedesco, and a third plaintiff commenced this action seeking, inter alia, to set aside the August 2004 deed. Hawkes Crossing, which was not named as a defendant, intervened to protect its title to the property. It also asserted cross claims against Ippoliti and Frank DiPietro.
After a nonjury trial, the Supreme Court concluded, among other things, that the August 2004 deed was not intended as a conveyance, but was instead intended to act as a mortgage security for the $200,000 loan. Based upon the terms of the option agreement, the court determined that the loan was usurious and void pursuant to Banking Law § 14-a and General Obligations Law § 5-501. The court declared, inter alia, that the deed is null and void, and that Bouffard held title to the property, subject to certain lien interests of other parties. The court also dismissed Hawkes Crossing’s cross claims against Ippoliti and Frank DiPietro, finding that, while Ippoliti and Frank DiPietro *868 had reason to question whether they could transfer good title to Hawkes Crossing, Zappi also had reason to question whether Ippoliti and Frank DiPietro could convey good title and should have conducted further investigation prior to closing. Hawkes Crossing appeals from the court’s determination that the deed was null and void and the court’s dismissal of its cross claims.
Real Property Law § 320 provides, in pertinent part, that a “deed conveying real property, which, by any other written instrument, appears to be intended only as a security in the nature of a mortgage, although an absolute conveyance in terms, must be considered a mortgage” (Real Property Law § 320; see People v Gass, 206 NY 609, 616 [1912]; DeMaio v Capozello, 74 AD3d 864, 865 [2010]; Henley v Foreclosure Sales, Inc., 39 AD3d 470 [2007]; Leonia Bank v Kouri, 3 AD3d 213, 217 [2004]; Basile v Erhal Holding Corp., 148 AD2d 484, 485 [1989]). In determining whether a deed was intended as security, “ ‘examination may be made not only of the deed and a written agreement executed at the same time, but also [of] oral testimony bearing on the intent of the parties and to a consideration [of] the surrounding circumstances and acts of the parties’ ” (Henley v Foreclosure Sales, Inc., 39 AD3d at 470, quoting Corcillo v Martut, Inc., 58 AD2d 617, 618 [1977]). Thus, “ ‘a court of equity will treat a deed, absolute in form, as a mortgage, when it is executed as a security for a loan of money. That court looks beyond the terms of the instrument to the real transaction; and when that is shown to be one of security, and not of sale, it will give effect to the actual contract of the parties’ ” (Basile v Erhal Holding Corp., 148 AD2d at 485, quoting Peugh v Davis, 96 US 332, 336 [1877]).
Here, the factual and credibility determinations of the trial court, which acted as the factfinder in this case, were warranted by the facts (see Goldstein v Guida, 74 AD3d 1143, 1144 [2010]; McCaffrey v McCaffrey, 69 AD3d 585 [2010]; Wasserman v Wasserman, 66 AD3d 880, 882 [2009]; Ivani v Ivani, 303 AD2d 639, 640 [2003]). The testimony established that, notwithstanding its form, the August 2004 transaction was, in substance, a mortgage loan. As the court noted, Jeff Reback candidly admitted that he was willing to lend Tedesco more money, but only if the transaction was structured in such a way that, if Tedesco defaulted, he could avoid the foreclosure process and simply take the property. In addition, it was uncontroverted that Befese made no attempt to exercise control over the property until Tedesco had defaulted not only on the original “option agreement,” but also on its two extensions.
This Court considered similar facts in Booth v Landau (103 *869 AD2d 733, 734 [1984]). In that case, the defendants simultaneously executed both a one-year option allowing the plaintiff’s attorney to repurchase the property at a substantially higher price and a one-year lease in favor of the plaintiff’s husband (see id,.). Based upon those facts, this Court determined that the deed was intended as security for a loan within the meaning of Real Property Law § 320 and should be considered a mortgage (see id.). Similarly, in Basile v Erhal Holding Corp. (148 AD2d at 484), the plaintiff executed á mortgage to the defendant in the sum of $101,202.59, along with a “deed in lieu of foreclosure,” which the defendant agreed not to record as long as the plaintiff fulfilled her obligations under the mortgage. This Court again found that, under those circumstances, the deed in lieu of foreclosure was intended as security for the plaintiff’s debt to the defendant (see id. at 486). Here, too, the Supreme Court correctly applied the principle that, “[w]here a deed has been given as security, it cannot be turned into a conditional sale by way of an agreement to reconvey” (Leonia Bank v Kouri, 3 AD3d at 217, citing Mooney v Byrne, 163 NY 86, 96 [1900]).
Since the August 2004 transaction was a mortgage loan (see Leonia Bank v Kouri, 3 AD3d at 216-217; Basile v Erhal Holding Corp., 148 AD2d at 485-486; Booth v Landau, 103 AD2d at 734), the Supreme Court correctly concluded that Befese could have obtained good title only by foreclosing on the subject property in the same manner as any other mortgagee (see Leonia Bank v Kouri, 3 AD3d at 217-218). However, even if Befese had attempted to do so, such a proceeding would have been unavailing, as the loan was plainly usurious and, therefore, unenforceable (see O’Donovan v Galinski, 62 AD3d 769, 769-770 [2009]; Abir v Malky, Inc., 59 AD3d 646, 649 [2009]).
The maximum rate of interest permitted by law is, in general, 16% annually (see General Obligations Law § 5-501; Banking Law § 14-a [1]; O’Donovan v Galinski, 62 AD3d at 769; Abir v Malky, Inc., 59 AD3d at 649). “In determining whether a transaction is usurious, the law looks not to its form, but its substance, or real character” (O’Donovan v Galinski, 62 AD3d at 769 [internal quotation marks omitted]). “Whether a transaction constitutes a cover for usury is a question of fact” and, “[w]hen determining whether a transaction constitutes a usurious loan it must be considered in its totality and judged by its real character, rather than by the name, color, or form which the parties have seen fit to give it” (Abir v Malky, Inc., 59 AD3d at 649 [internal quotation marks omitted]). To constitute usury, “ ‘[i]t must appear that the real purpose of the transaction was, on the one side, to lend money at usurious interest reserved in *870 some form by the contract and, on the other side, to borrow upon the usurious terms’ ” (id., quoting Donatelli v Siskind, 170 AD2d 433, 434 [1991]). “A usurious contract is void and relieves the plaintiff of the obligation to repay principal and interest thereon” (Abir v Malky, Inc., 59 AD3d at 649).
Here, the undisputed evidence established that the gross amount of the August 2004 loan was $200,000. The option payment of $20,000 represents 10% of the gross loan proceeds over 90 days and, thus, something in excess of 40% annually, or approximately 21/2 times the statutory maximum of 16% (see General Obligations Law § 5-501; Banking Law § 14-a [1]; O’Donovan v Galinski, 62 AD3d at 769; Abir v Malky, Inc., 59 AD3d at 649). Thus, this transaction was plainly usurious.
Based on the foregoing, Hawkes Crossing’s contention that it acquired good title from Ippoliti and Frank DiPietro is without merit. Real Property Law § 245 provides that a “greater estate or interest does not pass by any grant or conveyance, than the grantor possessed or could lawfully convey, at the time of the delivery of the deed.” Thus, “conveyances of land to which the grantors had no title convey no interest to the grantees” (O’Brien v Town of Huntington, 66 AD3d 160, 167 [2009]). Likewise, “[i]f a document purportedly conveying a property interest is void, it conveys nothing, and a subsequent bona fide purchaser or bona fide encumbrancer for value receives nothing” (ABN AMRO Mtge. Group, Inc. v Stephens, 91 AD3d 801, 803 [2012]; see Solar Line, Universal Great Bhd., Inc. v Prado, 100 AD3d 862, 863 [2012]; First Natl. Bank of Nev. v Williams, 74 AD3d 740, 742 [2010]; Ameriquest Mtge. Co. v Gaffney, 41 AD3d 750, 751 [2007]).
While Hawkes Crossing is correct that Real Property Law §§ 266 and 291 protect the title of a bona fide purchaser for value who lacks knowledge of fraud by the grantor or affecting the grantor’s title (see Real Property Law §§ 266, 291; Panther Mtn. Water Park, Inc. v County of Essex, 40 AD3d 1336, 1338 [2007]; Fischer v Sadov Realty Corp., 34 AD3d 630, 631 [2006]), these sections do not protect Hawkes Crossing’s purported interest in the subject property. As discussed above, the deed conveying the property to Befese is void as a consequence of the usurious loan underlying the August 2004 transaction (see Abir v Malky, Inc., 59 AD3d at 649). Consequently, the subsequent transfers from Befese to Ippoliti, Ippoliti to Ippoliti and Frank DiPietro, and Ippoliti and Frank DiPietro to Hawkes Crossing did not enjoy the protection provided by Real Property Law § 266 (see Solar Line, Universal Great Bhd., Inc. v Prado, 100 AD3d at 863). Since the August 2004 transaction was a usuri *871 ous mortgage and, therefore, void, all further attempted transfers of interest in the subject property are a nullity. Accordingly, the Supreme Court correctly concluded that Bouffard held title to the subject property and that Hawkes Crossing held no interest in it.
With respect to Hawkes Crossing’s cross claims against Ippoliti and Frank DiPietro, the Supreme Court agreed with Hawkes Crossing’s assertion that Ippoliti and Frank DiPietro were aware of the irregularities in Befese’s title and knew that the transfer of title from Befese to Ippoliti was questionable. However, the court also found that Zappi and Hawkes Crossing knew, due in part to the title report prepared for them in advance of closing, that there had been intervening transactions and found that it should have investigated these transactions. The court also commented that it “[could] not accept at face [value], the claim that Zappi had no knowledge as to the circumstances of the disappearance of Bouffard/Tedesco’s interest in the Property.”
“ ‘[I]n a nonjury trial, evaluating the credibility of the respective witnesses and determining which of the proffered items of evidence are most credible are matters committed to the trial court’s sound discretion’ ” (Goldstein v Guida, 74 AD3d at 1144, quoting Ivani v Ivani, 303 AD2d at 640; see McCaffrey v Mc-Caffrey, 69 AD3d 585 [2010]; Wasserman v Wasserman, 66 AD3d at 882). Here, the Supreme Court provided both a thorough summary of the evidence, including its evaluation of the witnesses’ credibility, and a detailed discussion of how it had reached its factual conclusions. In particular, the court described in detail a number of irregularities in the title report prepared for Zappi in advance of the closing, including reference to interests in the property which were being investigated with prior title insurers and cryptic remarks referencing other documents. Given the irregularities in the title report, Zappi’s knowledge of the plaintiffs’ prior interest in the property, and his discussions with Rego DiPietro and others, the court’s conclusion that a reasonably prudent purchaser in Zappi’s position would have made further inquiry is warranted by the facts (see Congregation Beth Medrosh of Monsey, Inc. v Rolling Acres Chestnut Ridge, LLC, 101 AD3d 797, 799 [2012]; Mortgage Elec. Registration Sys., Inc. v Rambaran, 97 AD3d 802, 804 [2012]; Sprint Equities [NY], Inc. v Sylvester, 71 AD3d 664, 665 [2010]; Fischer v Sadov Realty Corp., 34 AD3d at 631; Yen-Te Hsueh Chen v Geranium Dev. Corp., 243 AD2d 708, 709 [1997]; Astoria Fed. Sav. & Loan Assn. v June, 190 AD2d 644, 645 [1993]). Accordingly, the court properly dismissed Hawkes Crossing’s cross *872 claims against Ippoliti and Frank DiPietro. Dillon, J.P, Sgroi, Cohen and Miller, JJ., concur.