■ PATMOS FIFTH REAL ESTATE INC. et al., Respondents, v MAZL BUILDING, LLC, et al., Appellants, et al., Defendants. [2 NYS3d 83]—

Order, Supreme Court, New York County (Barbara Jaffe, J.),

entered July 30, 2013, which, to the extent appealed from, denied the motion of defendants Mazl Building, LLC (Mazl), NYA Building Construction Corp. (NYA) and High Line Holdings, LLC (collectively, defendants) to dismiss the complaint of plaintiffs, Patmos Fifth Real Estate Inc. (Patmos Fifth) and Patmos Westbury, LLC (Patmos Westbury) (together, Patmos) asserting, among other things, causes of action for violation of Real Property Law § 320 and unjust enrichment, unanimously affirmed, without costs.

On June 21, 2006, Patmos Fifth bought from Mazl an apartment building located at 214-216 East 52nd Street in Manhattan. In connection with the purchase, Patmos Fifth contracted with Mazl and NYA to renovate the building to make luxury condominium residential units and a restaurant. Patmos Fifth and Mazl executed a mortgage note, secured by the property, whereby Patmos Fifth promised to pay $9,350,000 by December 21, 2007 (the June mortgage). On December 6, 2006, Patmos Fifth borrowed from NYA $1,000,000, also secured by the property, to be paid by December 6, 2007 (the December mortgage).

By agreement dated January 21, 2008, Mazl loaned Patmos an additional $5,650,000, secured by the mortgages on both properties, due to be paid in full by December 21, 2008 (the January mortgage), and extended the time for payment of the June and December mortgages. In another agreement dated the same day, NYA assigned to Mazl the December mortgage. Finally, in yet another agreement also dated the same day, Patmos and Mazl consolidated the June, December, and January mortgages into a single $16,000,000 mortgage, due to be paid in full by December 31, 2008 (the consolidated mortgage).[1]

By a February 27, 2009 agreement between Mazl and Patmos Fifth, Mazl extended the maturity date of the consolidated mortgage until October 1, 2009, with an option for an additional nine-month extension to June 30, 2010 if Patmos Fifth paid $2,500,000 on or before October 1, 2009. The February 2009 agreement stated: "Simultaneous with the execution of this agreement, borrower [i.e. Patmos Fifth] shall deliver an executed deed to the premises to lender conveying the premises to [non-appealing defendant Shimon Wolkowicki] as to 62.5% interest and [Mazl] as to a 37.5% interest." The February 2009 agreement further provided that the "deed shall be delivered to lender[']s counsel . . . to be held in escrow by [counsel] and not to be released for filing unless and until borrower shall fail to

---

**1.** Defendants maintain that plaintiffs' principal personally executed the January 2008 note in the amount of $5,650,000 and personally agreed to guarantee payment.

make any of the payments required hereunder on October 1, 2009 or June 30, 2010." Finally, the agreement provided that, beginning on October 1, 2009, Patmos Fifth would "begin to make monthly interest payments on the then outstanding principal balance of the consolidated mortgage."

On October 1, 2009, Patmos defaulted on the consolidated mortgage. Shortly thereafter, Mazl's attorney released the deed from escrow, and on December 23, 2009, defendants recorded it in the City Register. Defendants then completed construction on the building and sold some of the condo units.

Patmos commenced this action in July 2011, alleging, among other things, that defendants' release and recording of the deed held in escrow, without commencing a foreclosure action, violated Real Property Law § 320. Specifically, Patmos alleged that in 2006, Mazl, the entity that controlled NYA and Highline, represented that it was a real estate developer. However, Patmos alleged, instead of developing the property, Mazl convinced Patmos Fifth to buy the property so that it could be renovated and developed into a luxury condominium. In connection with the development, Patmos Fifth signed the June, December, and January mortgages, which were to be satisfied by the proceeds of the sales of the completed condo units. Patmos further alleged that Mazl intentionally delayed development and actively discouraged prospective condo purchasers from buying so that additional interest would accrue on the mortgages. Additionally, Patmos alleged that Mazl's ultimate goal was to take over Patmos' interest in the property. Patmos also asserted an unjust enrichment claim for the $1 million in furnishings it provided for the condos.

In moving to dismiss the action, defendants argued, among other things, that the February 27, 2009 agreement constituted a "deed in lieu of foreclosure," allowing them to proceed to release the deed from escrow and record it, making Mazl the owner of the property without having to commence a foreclosure action. Defendants argued that this arrangement benefited Patmos by protecting its principal from personal liability and settling all of the debt it owed on the property, without any concern that defendants would seek additional money through a deficiency judgment. Defendants also argued that Patmos failed to state a claim for unjust enrichment, since, in exchange for acquiring ownership of the building, defendants forgave all of Patmos's debts without credit for any contributions made to the building.

Further, in their reply papers, defendants argued that Patmos's challenge to the deed was barred by laches, since

Patmos was fully aware of the recording of the deed in December 2009 but did not raise any objections until almost 19 months later, when it threatened litigation and then commenced this action.

The motion court denied defendants' motion to dismiss.[2] To begin, the court found that Patmos stated a claim for violation of Real Property Law § 320. In so doing, the court found that the February 2009 agreement did not expressly provide that the parties intended the deed to function as a conveyance of the property, as opposed to security for Patmos's debt (that is, a mortgage). Rather, the court found, the agreement simply reflected defendants' agreement to extend the deadline for payment of the consolidated mortgage in exchange for Patmos's agreement to execute the deed.

Moreover, the court found that Patmos's obligation to pay interest commencing on October 1, 2009 was not expressly contingent on the extension of the payment deadline to June 30, 2010; thus, the court concluded, the parties may have contemplated Patmos's continued ownership of the building despite a default on October 1, 2009. Accordingly, it found that notwithstanding defendants' right to record it, the deed was not, as a matter of law, a conveyance of the property and defendants were required to proceed by foreclosure in the same manner as any other mortgagee. The court did not consider defendants' argument, raised for the first time in their reply, that Patmos's challenge to the deed was barred by laches.

The court also allowed the unjust enrichment claim to proceed. In so doing, the court found that the complaint adequately alleged that the furnishings and decorations it provided for the property facilitated defendants' sale of the condos after defendants had divested Patmos of ownership.

Plaintiffs sufficiently stated a cause of action for violation of their rights under Real Property Law § 320 which provides that "[a] deed conveying real property, which, by any other written instrument, appears to be intended only as a security in the nature of a mortgage, although an absolute conveyance in terms, must be considered a mortgage." Further, the statute provides, the person "for whose benefit such deed is made, derives no advantage from the recording thereof, unless every writing, operating as a defeasance of the same, or explanatory of its being desired to have the effect only of a mortgage, or conditional deed, is also recorded therewith, and at the same time" (*id.*).

---

2. The court did dismiss the case as against defendant Raba Haim Abramov, who Patmos alleged controlled and dominated defendants.

Thus, Real Property Law § 320 codifies the well-settled common law principle "that the giving of a deed to secure a debt, in whatever form and however structured, creates nothing more than a mortgage" (*Leonia Bank v Kouri*, 3 AD3d 213, 216-217 [1st Dept 2004]). The statute does not require a conclusive showing that the transfer was intended as security; rather, it is sufficient that the conveyance appears to be intended only as "a security in the nature of a mortgage" (*id.* at 217).

Therefore, as the motion court properly found, "The holder of a deed given as security must proceed in the same manner as any other mortgagee—by foreclosure and sale—to extinguish the mortgagor's interest" (*id.*; *see also Gioia v Gioia*, 234 AD2d 588, 589 [2d Dept 1996], *lv denied* 89 NY2d 814 [1997]). This conclusion holds true because the mortgagor has the right of redemption, and that right cannot be waived or abandoned by any stipulation of the parties, even if the waiver is embodied in the mortgage (*see Basile v Erhal Holding Corp.*, 148 AD2d 484, 485-486 [2d Dept 1989], *lv denied* 75 NY2d 701 [1989]).

Here, Patmos sufficiently alleges that the deed was given as security for its debt, and defendants did not controvert that allegation as a matter of law (*see Leonia Bank*, 3 AD3d at 218; *see also Bouffard v Befese, LLC*, 111 AD3d 866, 868 [2d Dept 2013]). Similarly, defendants failed to establish that the February 2009 agreement was a "deed in lieu of foreclosure"—that is, an absolute conveyance or sale of the property—despite the language in the agreement stating that, should plaintiff breach, the deed may be released from escrow and recorded (*see Vitvitsky v Heim*, 52 AD3d 1103, 1105 [3d Dept 2008]). Rather, the agreement reflects that defendants agreed to extend the deadline for payment of the consolidated mortgage in exchange for plaintiffs' agreement to execute the deed. Even if the agreement had been structured or titled as a "deed in lieu of foreclosure"—and it was not—Patmos gave defendants the deed as security for the debt to defendants (*see Basile*, 148 AD2d at 486).

Similarly, there is no merit to defendants' claim that the statute of frauds and the parol evidence rule bar Patmos's challenges to the recorded deed. Even disregarding Patmos's allegations that Mazl intentionally delayed development in order to accrue interest and cause Patmos's default, the February 2009 agreement alone supports Patmos's claim that the deed was intended as security, and thus is sufficient to defeat defendants' motion to dismiss the Real Property Law § 320 cause of action. Assuming that issues remain at the summary judgment or trial stage as to whether the deed was intended as a security, parol evidence will be admissible because "examination may be made

not only of the deed and a written agreement executed at the same time, but also [of] oral testimony bearing on the intent of the parties and to a consideration [of] the surrounding circumstances and acts of the parties" (see *Henley v Foreclosure Sales, Inc.*, 39 AD3d 470 [2d Dept 2007] [internal quotation marks and citation omitted]).

Further, the motion court properly rejected defendants' claim that because Patmos waited more than 1½ years from the recording of the deed to bring this action, laches serves to bar Patmos's challenge to the deed. As defendants concede, they raised that issue only in passing for the first time in their reply, and did not fully brief it. Nor are there sufficient facts in the record establishing that Patmos intentionally delayed bringing the action, or that any delay caused defendants prejudice so as to demonstrate laches as a matter of law.

Finally, as to Patmos's unjust enrichment claim, defendants did not establish that they took title under the February 2009 agreement. Therefore, we need not consider whether Patmos's entitlement to credits for furnishings supplied to the property was somehow cancelled. In any event, defendants point to no support in the record for their claim that Patmos agreed to forego reimbursement for those furnishings. Concur—Friedman, J.P., Renwick, Moskowitz, Richter and Manzanet-Daniels, JJ.