Piccirilli v Benjamin (2021 NY Slip Op 04272)





Piccirilli v Benjamin


2021 NY Slip Op 04272


Decided on July 8, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:July 8, 2021

532375
[*1]Luciano Piccirilli, Appellant,
v
Ronald R. Benjamin, Respondent.

Calendar Date:June 2, 2021

Before:Lynch, J.P., Clark, Aarons, Reynolds Fitzgerald and Colangelo, JJ.

Coughlin & Gerhart, LLP, Binghamton (Alan J. Pope of counsel), for appellant.
Law Office of Ronald R. Benjamin, Binghamton (Ronald R. Benjamin of counsel), for respondent.



Lynch, J.P.
Appeal from an order of the Supreme Court (Cerio Jr., J.), entered October 13, 2020 in Broome County, which, among other things, denied plaintiff's cross motion for summary judgment.
On October 16, 2013, defendant, an attorney, obtained a $200,000 personal loan from plaintiff, which was secured by a secondary mortgage on defendant's residence in the Town of Binghamton, Broome County. In connection therewith, defendant executed a promissory note with an interest rate of 15% per annum payable in one year, subject to defendant's ability to extend the maturity date for two, six-month periods through October 16, 2015. Interim payments were not required, but full payment was due on the final maturity date. Correspondingly, defendant signed an affidavit of judgment by confession for $230,000, representing the full amount of principal and interest due on October 16, 2015, to be held in escrow as additional security (see CPLR 3218). That same day, the parties entered into a "Consulting Services Agreement" under which plaintiff agreed to provide consulting services to defendant for an 18-month term commencing that day, at a flat fee of $10,000 for the first 12 months and another $5,000 for the remaining six months.
As it turns out, defendant did not make any payments under the loan or the agreement. Nor were any services requested or provided under the agreement. Plaintiff commenced this action in 2017 by motion for summary judgment in lieu of complaint (see CPLR 3213), seeking judgment on the promissory note in the full amount due. Defendant cross-moved for summary judgment, asserting usury as an affirmative defense to his nonpayment of the debt. Supreme Court denied both motions.
Following depositions, defendant filed a renewed motion for summary judgment pursuant to CPLR 3212 seeking dismissal of the complaint, averring that the promissory note was void because the personal loan and the consulting agreement were the product of a single transaction designed to circumvent the maximum 16% interest rate set forth in General Obligations Law § 5-501. Plaintiff cross-moved for summary judgment to enforce the promissory note, taking the position that the personal loan and the consulting agreement were entirely separate transactions. Supreme Court again denied both motions, concluding that there was a triable issue of fact as to whether the personal loan and the consulting agreement were "prepared jointly with the purpose of evading the constraints of the usury law." Plaintiff appeals.
We affirm. "Summary judgment is a drastic remedy that should not be granted where there is any doubt as to the existence of triable issues of fact" (Hall v Queensbury Union Free Sch. Dist., 147 AD3d 1249, 1250 [2017] [internal quotation marks, brackets and citations omitted]; see Herman v Powers, 103 AD2d 992, 992 [1984]). As relevant here, General Obligations Law § 5-501 (2) provides that "[n]o person . . . shall, directly or indirectly, charge, take or receive [*2]any money, goods or things in action as interest on [a] loan . . . at a rate exceeding the [maximum permissible interest rate]" of 16% per annum (General Obligations Law § 5-501 [1]; see Banking Law § 14-a [1]; Roopchand v Mohammed, 154 AD3d 986, 988 [2017]; Martell v Drake, 124 AD3d 1200, 1201 [2015]). "A usurious contract is void and relieves the borrower of the obligation to repay principal and interest thereon" (Roopchand v Mohammed, 154 AD3d at 988 [internal quotation marks and citations omitted]; see Martell v Drake, 124 AD3d at 1201). "While at trial, [the party claiming usury] has the burden of establishing usury by clear and convincing evidence, in the context of a summary judgment motion, the burden is on [the party moving for summary judgment to enforce the transaction] to establish, prima facie, that the transaction was not usurious" (Abir v Malky, Inc., 59 AD3d 646, 649 [2009]; see Ujueta v Euro-Quest Corp., 29 AD3d 895, 895-896 [2006]). Where "the usurious nature of the transaction does not appear upon the face of the instrument" (Greenfield v Skydell, 186 AD2d 391, 391 [1992]), the issue of "[w]hether the transaction constitutes a cover for usury is a question of fact" (Bouffard v Befese, LLC, 111 AD3d 866, 869 [2013] [internal quotation marks and citations omitted]). In determining the nature of the transaction, "the law looks not to its form, but its substance, or real character" (id. [internal quotation marks and citations omitted]; see Quackenbos v Sayer, 62 NY 344, 346 [1875]).
In support of his cross motion for summary judgment, plaintiff emphasized that the promissory note, which set a legal 15% interest rate, was "subject to the express condition that at no time shall the [m]aker be obligated or required to pay, nor shall the [h]older be permitted to collect, interest at a rate in excess of the maximum rate permitted by law." Plaintiff also proffered an email he had sent to defendant four days prior to the note's execution, outlining requirements for the loan and pointing out that a 16% interest rate was "the highest rate so that there [was] no exposure to [the] usury [law]." Plaintiff submitted his deposition transcript, during which he maintained that the consulting agreement was executed in good faith as a separate and distinct transaction from the personal loan, alleging that defendant had requested his services as a construction consultant and proposed the fee structure.
Plaintiff also submitted the deposition transcript of his attorney, Stephen Yonaty, who prepared the loan documents and the consulting agreement. Yonaty testified that plaintiff did not want to exceed the usury rate on the personal loan and, accordingly, the interest rate was intentionally set at 15%. Yonaty also maintained that the personal loan was a separate transaction from the consulting agreement, emphasizing defendant's failure to raise any concerns about a usurious rate at the time of its execution. Moreover, Yonaty explained that, [*3]when he emailed defendant in August 2014 to advise that payment on the personal loan was about to come due, defendant did not object to the transaction as unlawful, but merely indicated that he could not make payment at that time but intended to do so in the future.
In contrast, plaintiff also submitted a transcript of defendant's deposition testimony, during which defendant explained that the loan transaction came to fruition when he informed plaintiff that he was "looking to borrow money" and "may have to go to some rip-off artist and pay as much as 40 percent." Defendant testified that he told plaintiff that he would "rather pay him" than a stranger and "talked about [a] 25 percent return." According to defendant, in his later discussions with Yonaty regarding the transaction, Yonaty indicated that defendant could not directly accept a 25% interest rate because it would violate usury laws and no discussion was had with respect to the terms of the consulting agreement other than that one would be executed. As such, defendant testified that it was "clear" to him "that there was going to be an intent to bypass the usury rates through the consulting agreement." He further testified that he never requested services under the consulting agreement, which he characterized as a "sham," because the parties "knew [it] would not be followed through . . . in any way, shape or form."
Defendant's sworn affidavit submitted in support of his own motion consistently emphasized that he signed the consulting agreement "without ever discussing [its] terms, the need for
. . . expert services or anything remotely related to retaining plaintiff . . . as a construction consultant" and that the $15,000 fee arrangement was additional interest on the personal loan. Defendant also submitted excerpts from Yonaty's deposition, during which Yonaty revealed that he, rather than defendant, may have been the individual who suggested the $15,000 fee for consulting services and that he prepared a single bill for his legal services pertaining to both transactions.
Although plaintiff generally established his prima facie entitlement to judgment as a matter of law by submitting the executed promissory note, along with evidence of defendant's default (see Lugli v Johnston, 78 AD3d 1133, 1135 [2010]), Supreme Court properly denied plaintiff's cross motion given the conflicting testimony as to the true nature of the consulting agreement. We are mindful of the "strong presumption against a finding of usury" (Feinberg v Old Vestal Rd. Assoc., 157 AD2d 1002, 1004 [1990]), and that the "usurious nature of the transaction does not appear upon the face of the [loan documents]" (Greenfield v Skydell, 186 AD2d at 391). That said, we find that the parties' characterization of the entire transaction presents a credibility issue for resolution by a factfinder at trial (see Vega v Restani Constr. Corp., 18 NY3d 499, 505 [2012]; Torgersen v A & F Black Cr. Realty, LLC, 158 AD3d 1042, 1044[*4][2018]; Hall v Queensbury Union Free Sch. Dist., 147 AD3d at 1250). Several factors lead us to this conclusion. For instance, the promissory note and consulting agreement were executed on the same day and prepared by plaintiff's attorney. Defendant never requested any services and plaintiff never requested any payments under the agreement.[FN1] Plaintiff testified that he was to provide construction consultation services, while the agreement specified that he would "provide oversight with respect to [defendant's] operations and investments." Defendant countered that he required no such services for his law practice. Plaintiff also testified that payment was only due under the agreement for services requested and actually provided, but the agreement does not read that way and specifies that services "shall" be provided and payments "shall" be made. Under these circumstances, we take heed of the following observation: "One well-recognized way of concealing a[] usurious transaction is an ostensibly unrelated contract providing for payment by the borrower for the lender's services which are of little value or which are not to be rendered" (In Re Rosner, 48 BR 538, 548 [Bankr ED NY 1985] [internal quotation marks and citation omitted]; see AP Links, LLC v Global Golf, Inc., US Dist Ct, ED NY, 08-CV-3602 [TCP] [AKT], Platt, J., 2010 WL 11629613, *5). Since there is uncertainty as to the true nature of the overall transaction, summary judgment was properly denied.
Clark, Aarons and Colangelo, JJ., concur.
ORDERED that the order is affirmed, with costs.



Footnotes

Footnote 1: We are mindful of our decision in Lewis v Gummer (171 AD2d 989 [1991]), but do not find it controlling in this case. Unlike here, at least some payments were made under the consulting agreement in Lewis, and the plaintiff utilized his own credit to secure the funds from a third-party banking institution, lending support to the plaintiff's assertion that the transaction was bona fide and made without the intent to set a usurious rate (id. at 989; see AP Links, LLC v Global Golf, Inc., US Dist Ct, ED NY, 08-CV-3602 [TCP] [AKT], Platt, J., 2010 WL 11629613, *5 [2010]; Ahern v Miloslau, 128 AD3d 992, 993 [2015]; Lugli v Johnston, 78 AD3d 1133, 1135 [2010]; Greenfield v Skydell, 186 AD2d 391, 391 [1992]).