Piccirilli v Benjamin (2024 NY Slip Op 02113)

Piccirilli v Benjamin

2024 NY Slip Op 02113

Decided on April 18, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:April 18, 2024

CV-22-2152 CV-22-2229
[*1]Luciano Piccirilli, Appellant-Respondent,
v
Ronald R. Benjamin, Respondent- Appellant.

Calendar Date:February 23, 2024

Before:Garry, P.J., Aarons, Lynch, Fisher and Mackey, JJ.

Coughlin & Gerhart, LLP, Binghamton (Alan J. Pope of counsel), for appellant-respondent.
Ronald R. Benjamin, Binghamton, respondent-appellant pro se.

Garry, P.J.
(1) Cross-appeals from a judgment of the Supreme Court (Joseph A. McBride, J.), entered November 30, 2022 in Broome County, upon a verdict rendered in favor of plaintiff, and (2) appeal from an order of said court, entered October 21, 2022 in Broome County, which, among other things, granted plaintiff's motion to confirm the verdict.
The facts of this matter are familiar to this Court, having been the subject of a prior appeal (196 AD3d 895 [3d Dept 2021]). Relevant here, in October 2013, defendant, an attorney, sought and obtained a $200,000 personal loan from plaintiff. The loan was secured by a secondary mortgage on defendant's residence in the Town of Binghamton, Broome County. In connection therewith, defendant executed a promissory note with an interest rate of 15% per annum payable in one year, subject to defendant's ability to extend the maturity date for two, six-month periods through October 16, 2015. Interim payments were not required, but full payment was due on the final maturity date. Defendant further signed an affidavit of judgment by confession for $230,000, representing the full amount of principal and interest due on October 16, 2015, to be held in escrow as additional security (see CPLR 3218). That same day, the parties also entered into an agreement under which plaintiff agreed to provide consulting services related to construction and business matters to defendant for the immediately ensuing 18-month period, for a total fee of $15,000. Defendant did not make any payments under the loan or the agreement.
In 2017, plaintiff commenced this action by motion for summary judgment in lieu of complaint (see CPLR 3213), seeking judgment on the promissory note in the full amount due. Defendant cross-moved for summary judgment, asserting usury as an affirmative defense to his nonpayment of the debt. Supreme Court denied both motions. Following depositions, defendant renewed his motion for summary judgment pursuant to CPLR 3212, seeking dismissal of the complaint upon the basis that the promissory note was void because the personal loan and the consulting agreement were the product of a single transaction designed to circumvent the maximum 16% interest rate set forth in General Obligations Law § 5-501. Plaintiff cross-moved for summary judgment to enforce the promissory note, asserting that the personal loan and the consulting agreement were separate transactions. Supreme Court again denied both motions, and this Court affirmed (196 AD3d at 900).
The matter proceeded to a jury trial. The jury found both that defendant had entered into the loan agreement with the intent to defraud plaintiff and that the loan was usurious. Plaintiff moved to confirm the verdict as to the fraud finding and to enter judgment against defendant, and defendant cross-moved to set aside the verdict as to the fraud finding, to direct a verdict in his favor as to the usury finding and to deny entry of judgment in plaintiff's favor. By October 2022 order, Supreme [*2]Court granted plaintiff's motion, denied defendant's cross-motion and set damages at an interest rate of 9% from the date of the verdict, as well as awarded other costs and disbursements. The court then entered judgment, awarding plaintiff $209,206.47. Plaintiff appeals from both the order and the judgment, and defendant cross-appeals from the judgment.[FN1]
Initially, defendant failed to preserve his contention that plaintiff's fraud in the inducement claim should not have been presented to the jury as it is duplicative of his breach of contract claim (see Aievoli v Farley, 223 AD2d 613, 614 [2d Dept 1996]). In any event, his argument has no merit. "A separate cause of action seeking damages for fraud cannot stand when the only fraud alleged relates to a breach of contract" (Gizzi v Hall, 300 AD2d 879, 880 [3d Dept 2002] [citations omitted]; see New York State Workers' Compensation Bd. v SGRisk, LLC, 116 AD3d 1148, 1152 [3d Dept 2014]). However, "where, as here, plaintiff['s] allegations of intentional fraud, though parallel in many respects to the breach of contract claim, include claims of fraudulent misrepresentations made by defendant[ ] which induced [him] to enter into the contract
. . . , they are not merely redundant of the breach of contract claim" (Gizzi v Hall, 300 AD2d at 880 [internal quotation marks and citation omitted]; see Kosowsky v Willard Mtn., Inc., 90 AD3d 1127, 1129 [3d Dept 2011]). Accordingly, plaintiff's fraud cause of action was properly before the jury (see Calabrese Bakeries, Inc. v Rockland Bakery, Inc., 102 AD3d 1033, 1036 [3d Dept 2013]). Defendant's related argument that plaintiff failed to timely raise his fraud claim is belied by the record.
Defendant further argues that the jury's finding as to fraud is unsupported by legally sufficient evidence. A verdict may be set aside as not supported by legally sufficient evidence where "there is simply no valid line of reasoning and permissible inferences which could possibly lead rational persons to the conclusion reached by the jury on the basis of the evidence presented at trial" (Mazella v Beals, 27 NY3d 694, 705 [2016] [internal quotations marks, brackets and citation omitted]; see Reynolds v State of New York, 180 AD3d 1116, 1117 [3d Dept 2020]). "A fraudulent inducement cause of action requires proof that the defendant made a misrepresentation that was known to be false and made with the purpose of inducing the plaintiff to enter a contract, justifiable reliance on the false representation and related damages" (Luckow v RBG Design-Build, Inc., 156 AD3d 1289, 1293 [3d Dept 2017] [citations omitted]; see Delibasic v Manojlovic, 174 AD3d 1096, 1097 [3d Dept 2019]). Specifically, the misrepresentations at issue "must be more than mere promissory statements about what is to be done in the future and must rise to the level of material misrepresentations of present facts or promises made with a present, albeit undisclosed, intent not to perform them" (Bibeau v Ward, 193 AD2d [*3]875, 877 [3d Dept 1993]). "A party alleging fraud in the inducement bears the burden of proving each of the elements by clear and convincing evidence" (Hidden Pond Schodack, LLC v Hidden Pond Homes, Inc., 189 AD3d 1792, 1795 [3d Dept 2020] [citations omitted]; see State of New York v Industrial Site Servs., Inc., 52 AD3d 1153, 1157 [3d Dept 2008]).
At trial, plaintiff testified that defendant had previously represented him and a business, of which he was part owner, in prior unrelated litigation beginning around 2011. Defendant testified that he could not recall representing plaintiff individually, but he did not dispute having done so. Thereafter, in 2013, defendant sought and obtained a $200,000 loan from plaintiff at a 15% interest rate. The parties stipulated to the fact that there was a breach of contract resulting from defendant's failure to make payments pursuant to the loan agreement. Plaintiff maintained at trial that he had entered into the loan agreement based upon defendant's representation that he would repay the loan in accord with the terms of their agreement. Although defendant testified at trial that he had "every intention" of repaying the loan at the time of the agreement, plaintiff presented defendant's conflicting deposition testimony to the jury. In that earlier testimony, when asked whether, "[w]hen [he] signed the mortgage, did [he] intend in [his] mind to pay [plaintiff]," defendant had answered "no." Defendant's explanation that he had been confused by that question, as well as his conflicting trial testimony, presented a credibility issue for the jury to resolve (see Revell v Guido, 124 AD3d 1006, 1011 [3d Dept 2015]). In view of the foregoing, we find that legally sufficient evidence supports the jury's finding in favor of plaintiff as to the fraud claim (see Luckow v RBG Design-Build, Inc., 156 AD3d at 1293; Kaddo v King Serv., 250 AD2d 948, 949 [3d Dept 1998]). Defendant's related challenge to certain comments made by plaintiff's counsel during summation on the issue of fraud, i.e., that defendant's conduct may constitute a violation of Rules of Professional Conduct [22 NYCRR 12.00] rule 1.8, is unpreserved by his failure to object thereto (see Cunningham v Anderson, 85 AD3d 1370, 1375 [3d Dept 2011], lv dismissed 17 NY3d 948 [2011]).
Plaintiff, in turn, argues that defendant failed to meet his burden to demonstrate by clear and convincing evidence that the loan agreement was usurious (see Giventer v Arnow, 37 NY2d 305, 309 [1975]; Roopchand v Mohammed, 154 AD3d 986, 988 [2d Dept 2017]). Pertinent here, "[n]o person . . . shall, directly or indirectly, charge, take or receive any money, goods or things in action as interest on [a] loan . . . at a rate exceeding the [maximum permissible interest rate]" of 16% per annum (General Obligations Law § 5-501 [2]; see Banking Law § 14-a [1]; Martell v Drake, 124 AD3d 1200, 1201 [3d Dept 2015]). It is undisputed that defendant initially suggested an interest rate of around 25% [*4]when proposing the loan agreement to plaintiff, which would have resulted in an interest payment between $40,000-$50,000. Plaintiff thereafter discussed the matter with independent counsel, who informed him that an interest rate above 16% would be usurious. Following further discussion, plaintiff and defendant agreed to an interest rate on the loan of 15%, amounting to $30,000. Repayment of the loan, together with interest payments, was to be made no later than October 16, 2015. On the same day that the parties entered into the loan agreement, they also executed a consulting agreement, in which defendant agreed to pay plaintiff a total of $15,000 for plaintiff's consulting services, to be paid in full by April 16, 2015. The parties offered conflicting testimony as to who devised the consulting agreement, with defendant testifying that he had no need for plaintiff's consulting services and that it was plaintiff who had suggested the arrangement for purposes of circumventing the interest rate limitations on the loan agreement. In view of the contemporaneous execution of the consulting and loan agreements, the particular financial gain to plaintiff and the undisputed lack of consulting services requested or rendered thereafter, we find the evidence sufficiently supports the jury's finding that the loan was executed with the intent to take interest in excess of the legal rate (see Feinberg v Old Vestal Rd. Assoc., 157 AD2d 1002, 1003-1004 [3d Dept 1990]; compare Fried v Bolanos, 217 AD2d 823, 824 [3d Dept 1995]).
Finally, both parties challenge Supreme Court's exercise of discretion relative to the judgment. "[T]he essence of equity jurisdiction has been the power to mold each decree to the necessities of the particular case" and "once a court of equity has obtained jurisdiction over the subject matter of the action, as Supreme Court had here, it has the power to dispose of all matters at issue and to grant complete relief in accordance with the equities of the case" (Dickerson v Thompson, 88 AD3d 121, 123 [3d Dept 2011] [internal quotation marks, ellipses, brackets and citations omitted]; see Matter of ANO, Inc. v Goldberg, 167 AD3d 731, 733 [2d Dept 2018]). Thus, " 'the court may grant any type of relief within its jurisdiction appropriate to the proof whether or not demanded, imposing such terms as may be just' " (State of New York v Barone, 74 NY2d 332, 336 [1989], quoting CPLR 3017 [a]; accord A & F Hamilton Hgts. Cluster, Inc. v Urban Green Mgt., Inc., 146 AD3d 502, 502 [1st Dept 2017]).
"[L]ong-settled public policy closes the doors of our courts to those who sue to collect the rewards of corruption" (McConnell v Commonwealth Pictures Corp., 7 NY2d 465, 469 [1960]), and "the basic principle [stands] that one may not profit from his [or her] own wrong" (Alami v Volkswagen of Am., 97 NY2d 281, 286 [2002] [internal quotation marks and citation omitted]). It thus follows that the perpetrator of fraud should not profit from his or her own wrongdoing[*5], nor retain the benefits derived therefrom (see generally Riggs v Palmer, 115 NY 506, 511 [1889]; Bumbolo v Faxton St. Luke's Healthcare, 196 AD3d 1119, 1121 [4th Dept 2021]; Rajic v Faust, 165 AD3d 716, 718 [2d Dept 2018]; Tucker v Mashomack Fish & Game Preserve Club, 199 AD2d 957, 958-959 [3d Dept 1993]). To that end, although "[a] usurious contract is void and relieves the borrower of the obligation to repay principal and interest thereon" (Roopchand v Mohammed, 154 AD3d at 988 [internal quotation marks and citation omitted]), we agree with Supreme Court's reasoning that "it would be inappropriate for [defendant] to skirt his obligation to pay back a loan on the basis of a usury defense when [the] testimony clearly revealed that he, a lawyer by trade, fraudulently induced [plaintiff], a co-owner member of a business entity that [defendant] previously represented[,] into a usurious loan" (see generally Schaaf v Borsher, 82 AD2d 880, 880 [2d Dept 1981]). Balancing the jury's findings that the subject loan was both usurious but induced by fraud, such that both parties were at fault, we find that Supreme Court providently exercised its broad equitable powers in awarding $200,000 in damages to plaintiff — the principal amount on the loan without interest — while imposing the statutory interest rate of 9% from the time of the jury verdict until payment (see CPLR 5001, 5004; see generally Matter of ANO, Inc. v Goldberg, 167 AD3d at 733; Tucker v Mashomack Fish & Game Preserve Club, 199 AD2d at 958-959; compare Norwest Mtge., Inc. v Brown, 35 AD3d 682, 684 [2d Dept 2006]).
Aarons, Lynch, Fisher and Mackey, JJ., concur.
ORDERED that the judgment is affirmed, without costs.
ORDERED that the appeal from the order is dismissed, without costs.

Footnotes

Footnote 1: Contrary to plaintiff's contentions, defendant appeals "from the final judgment[, which] brings up for review the order[ ] . . . denying [defendant's] motion to set aside the verdict" (Minutolo v County of Broome, 130 AD3d 1202, 1203 n [3d Dept 2015]; see CPLR 5501 [a] [1]). Likewise, although plaintiff's ability to appeal from the October 2022 order terminated upon entry of the final judgment and that appeal must therefore be dismissed (see Wilcox v Newark Val. Cent. Sch. Dist., 129 AD3d 1230, 1231 n 1 [3d Dept 2015], lv dismissed 26 NY3d 1060 [2015]; Burnell v Marine Midland Bank, 288 AD2d 784, 784 [3d Dept 2001]), plaintiff's appeal from the final judgment also brings up for review the October 2022 order.