MARK A. WASSERMAN, Appellant-Respondent, v JOANN WASSERMAN, Respondent-Appellant. [888 NYS2d 90]—

In an action for a divorce and ancillary relief, the plaintiff appeals, as limited by his brief, from stated portions of a judgment of the Supreme Court, Westchester County (Tolbert, J.), dated May 22, 2008, which, inter alia, after a nonjury trial, awarded the defendant 50% of the value of the plaintiff's businesses, failed to award him a separate property credit with regard to the marital residence, directed him to pay the sum owed on the distributive award to the defendant in three equal installments, six months apart, and directed him to pay the defendant maintenance in the sum of $10,000 per month for the two years immediately following the judgment of divorce, the sum of $7,500 per month for the next three years, and the sum of $5,000 per month for three years after that, and the defendant cross-appeals, as limited by her brief, from stated portions of the same judgment which, among other things, failed to award her lifetime maintenance and failed to direct the plaintiff to pay her health insurance premiums.

Ordered that the judgment is modified, on the law and the facts, by deleting the provision thereof directing the plaintiff to pay the sum owed on the distributive award to the defendant in three equal installments, six months apart, and substituting therefor a provision directing the plaintiff to pay the sum owed on the distributive award to the defendant in six equal installments, six months apart, with interest at the rate of 9% from the date of the judgment until the balance is paid; as so modified, the judgment is affirmed insofar as appealed and cross-appealed from, without costs or disbursements.

The plaintiff and the defendant were married on July 6, 1979. The plaintiff is 65 years old and the defendant is 57 years old. During the course of their marriage, the parties had two children, who are emancipated.

In 1979, shortly before the birth of their first child, the

plaintiff became the sole source of financial support for the family. The defendant was a stay-at-home mother prior to the commencement of this divorce action. In 2002 the defendant graduated from SUNY Purchase with a BA degree. In November 2003 she became a licensed real estate broker.

The parties were divorced by judgment dated May 22, 2008. The defendant was awarded, inter alia, 50% of the value of the plaintiff's businesses and 50% of the value of the marital premises, and maintenance in the sum of $10,000 per month for the two years immediately following the judgment of divorce, the sum of $7,500 per month for the next three years, and the sum of $5,000 per month for three years after that.

The Supreme Court properly relied upon the opinion of the defendant's expert regarding the value of the plaintiff's business interests. In a nonjury trial, evaluating the credibility of the respective witnesses and determining which of the proffered items of evidence are most credible are matters committed to the trial court's sound discretion (*see Ivani v Ivani,* 303 AD2d 639 [2003]; *L'Esperance v L'Esperance,* 243 AD2d 446 [1997]). There is no uniform rule for fixing the value of a business for the purpose of equitable distribution. Valuation is an exercise properly within the fact-finding power of the trial court, guided by expert testimony (*see Ivani v Ivani,* 303 AD2d at 639; *L'Esperance v L'Esperance,* 243 AD2d at 446). The determination of the factfinder as to the value of a business, if within the range of the testimony presented, will be accorded deference on appeal if it rests primarily on the credibility of expert witnesses and their valuation techniques (*see Ivani v Ivani,* 303 AD2d at 639; *L'Esperance v L'Esperance,* 243 AD2d 446 [1997]). Here, the record supports the Supreme Court's determination as to the value of the plaintiff's business.

Considering the circumstances of the case, the Supreme Court providently exercised its discretion in awarding the defendant 50% of the value of the plaintiff's businesses (*see* Domestic Relations Law § 236 [B] [5] [d] [6], [13]). The fact that the plaintiff may have made greater economic contributions to the marriage than the defendant does not necessarily mean that he was entitled to a greater percentage of the marital property (*see Price v Price,* 69 NY2d 8 [1986]; *Rose v Rose,* 18 AD3d 852 [2005]). However, the plaintiff's financial statements indicate that he cannot pay the distributive award in only three installments, six months apart, without liquidating his assets. Therefore, we modify to direct that he make six equal installment payments to the defendant, each six months apart, with interest at the rate of 9% from the date of the judgment until

the balance is paid (*see Schussler v Schussler,* 109 AD2d 875, 877 [1985]; *Basile v Basile,* 199 AD2d 649, 652 [1993]; *Bohnsack v Bohnsack,* 185 AD2d 533, 536 [1992]).

The Supreme Court providently exercised its discretion in determining an appropriate maintenance award. " '[T]he amount and duration of maintenance is a matter committed to the sound discretion of the trial court, and every case must be determined on its own unique facts' " (*DiBlasi v DiBlasi,* 48 AD3d 403, 404 [2008], quoting *Wortman v Wortman,* 11 AD3d 604, 606 [2004]). " 'In determining the appropriate amount and duration of maintenance, the court is required to consider, among other factors, the standard of living of the parties during the marriage and the present and future earning capacity of both parties' " (*DiBlasi v DiBlasi,* 48 AD3d at 404, quoting *Haines v Haines,* 44 AD3d 901, 902 [2007]; *see* Domestic Relations Law § 236 [B] [6] [a]). While the Supreme Court properly found that the defendant was capable of earning a living, "the wife's ability to become self-supporting with respect to *some* standard of living . . . in no way . . . obviates the need for the court to consider the predivorce standard of living" (*Hartog v Hartog,* 85 NY2d 36, 52 [1995]; *see Bean v Bean,* 53 AD3d 718 [2008]). The maintenance award in the sum of $10,000 per month for the two years immediately following the judgment of divorce, the sum of $7,500 per month for the next three years, and the sum of $5,000 per month for three years after that, will permit the defendant to maintain the pre-divorce standard of living while allowing her a reasonably sufficient time to become self-supporting (*see* Domestic Relations Law § 236 [B] [6] [a] [4]; *Summer v Summer,* 85 NY2d 1014 [1995]; *Ruane v Ruane,* 55 AD3d 586 [2008]; *Griggs v Griggs,* 44 AD3d 710, 712-713 [2007]; *Palestra v Palestra,* 300 AD2d 288, 289 [2002]).

Contrary to the plaintiff's contention, the court properly denied his request for a credit for his separate property contribution of the down payment on the parties' marital residence (*see Romano v Romano,* 40 AD3d 837 [2007]; *Scartozzi v Scartozzi,* 32 AD3d 1008 [2006]). The plaintiff failed to meet his burden at trial of establishing that the funds for the down payment came from his separate savings account.

Contrary to the defendant's contention, the Supreme Court properly declined to direct the plaintiff to pay her health insurance premiums, where she has been awarded a substantial distributive award and maintenance (*see Atwal v Atwal,* 270 AD2d 799 [2000]).

The plaintiff's contention that the defendant's testimony was evasive and replete with falsehoods raised an issue of credibility,

the resolution of which is best left to the trier of fact, who had the opportunity to observe the parties (*see Czaban v Czaban,* 44 AD3d 894 [2007]; *Robertson v Robertson,* 33 AD3d 686 [2006]). We decline to substitute our judgment as to credibility for that of the trial court (*see Czaban v Czaban,* 44 AD3d at 894; *Tissot v Tissot,* 243 AD2d 462 [1997]; *Gunn v Gunn,* 240 AD2d 704 [1997]; *Caravello v Caravello,* 215 AD2d 428 [1995]; *Kalinich v Kalinich,* 205 AD2d 736 [1994]; *Caso v Caso,* 161 AD2d 683 [1990]; *Schottenfeld v Schottenfeld,* 152 AD2d 690 [1989]; *Raso v Raso,* 129 AD2d 692 [1987]). Mastro, J.P., Santucci, Chambers and Lott, JJ., concur.