**3** AMY BRAUNSTEIN, Respondent-Appellant, v DAVID J. BRAUNSTEIN, Appellant-Respondent. (Action No. 1.) SUSAN ANN STARK et al., Appellants, v JOLA SALES CORPORATION et al., Respondents. (Action No. 2.) [18 NYS3d 73]—

In an action for a divorce and ancillary relief (action No. 1), and a related action, inter alia, for breach of contract (action No. 2), which were joined for trial, the defendant in action No. 1, David J. Braunstein, appeals from stated portions of a judgment of divorce of the Supreme Court, Suffolk County (Cohen, J.), entered April 17, 2012, in action No. 1, upon a decision of the same court, dated November 30, 2011, made after a nonjury trial, and upon an order of the same court dated January 17, 2012, granting the motion of Amy Braunstein, the plaintiff in action No. 1, pursuant to CPLR 4404 (b), to modify the decision; and the plaintiff in action No. 1, Amy Braunstein, cross-appeals from (1) so much of an order of the same court dated March 28, 2013, as denied those branches of her motion pursuant to CPLR 5019 which were to resettle certain provisions of the judgment of divorce entered April 17, 2012, "to provide that Plaintiff is entitled to twenty-five percent of the total net proceeds . . . from the ultimate sale of real property located at 10 Connor Lane, Deer Park, New York in an arm's length, good faith transaction for fair value," and for a preliminary injunction, and (2) a resettled judgment of divorce of the same court entered May 13, 2013; and Susan Ann Stark and the Joseph Braunstein Revocable Trust, the plaintiffs in action No. 2, appeal from a judgment of the same court entered February 10, 2012, in action No. 2, which, upon stated portions of the decision dated November 30, 2011, is in favor of the defendants in action No. 2 and against them, inter alia, dismissing the amended complaint.

Ordered that the cross appeal from the order dated March 28, 2013, is dismissed, without costs or disbursements, on the ground that it was superseded by the resettled judgment; and it is further,

Ordered that on the Court's own motion, the notice of appeal by David J. Braunstein from the judgment of divorce entered April 17, 2012, in action No. 1. is deemed to be a premature notice of appeal from the resettled judgment of divorce entered May 13, 2013, in action No. 1 (*see* CPLR 5520 [c]); and it is further,

Ordered that, on the Court's own motion, the notice of appeal by Susan Ann Stark and the Joseph Braunstein Revocable Trust, the plaintiffs in action No. 2, dated February 13, 2012, is deemed to be a notice of appeal from the judgment entered February 10, 2012, in action No. 2 (*see* CPLR 5512 [a]); and it is further,

Ordered that the resettled judgment entered May 13, 2013, is modified, on the law, (1) by, upon the granting of that branch of the motion of Amy Braunstein, the plaintiff in action No. 1, which was to resettle the judgment of divorce to add a certain provision, deleting the seventeenth decretal paragraph thereof under the heading "Net Proceeds of Sale of 10 Connor Lane," and substituting therefor a decretal paragraph stating: "Ordered AND ADJUDGED that as a matter of equitable distribution, the plaintiff (Amy Braunstein) is entitled to twenty-five percent (25%) of the total net proceeds (i.e., amount equal to fifty percent [50%] of the marital portion of the total net proceeds) from the ultimate sale of the real property located at 10 Connor Lane, Deer Park, New York, 11729, in an arm's length, good faith transaction for fair value," and (2) by, upon the granting of that branch of the motion of Amy Braunstein, the plaintiff in action No. 1, which was for a preliminary injunction, adding thereto a provision "[d]irecting that twenty-five percent (25%) of the total net proceeds (i.e., an amount equal to fifty percent [50%] of the marital portion of the total net proceeds) from any sale of the real property located at 10 Connor Lane, Deer Park, New York, 11729, be held in escrow by the plaintiff's counsel, and that such proceeds shall not be released absent written order from this court or written agreement between the parties"; as so modified, the resettled judgment is affirmed insofar as appealed from, without costs or disbursements, and the order dated March 28, 2013, is modified accordingly; and it is further,

Ordered that the judgment entered February 10, 2012, in action No. 2, is affirmed, without costs or disbursements.

Amy Braunstein (hereinafter Amy) and David J. Braunstein (hereinafter David) were married in 1980. In February 2008, Amy commenced an action for a divorce and ancillary relief (action No. 1; hereinafter the divorce action). Marital property

that was the subject of equitable distribution included David's interests in two closely held family corporations. The first corporation, Jola Sales Corporation (hereinafter Jola Corp.), manufactured and sold greeting cards under the name of Magic Moments, and was owned in equal parts by David and his father, Joseph Braunstein (hereinafter Joseph). The second corporation, 10 Connor Lane Corporation (hereinafter Connor Lane Corp.), whose principal asset was a commercial building (hereinafter the commercial property), was owned in equal parts by David and Joseph.

In November 2007, David vacated the marital residence. In July 2008, Jola Corp. stopped doing business, allegedly discarding as trash Magic Moment's inventory consisting of 13 million greeting cards and selling off some of its manufacturing equipment to a family relative who operated a greeting card business in Florida. In November 2008, David relocated to Florida and thereafter began working for that relative. Also in November 2008, Connor Lane Corp. sold the commercial property. In February 2009, Joseph and the Joseph Braunstein Revocable Trust (hereinafter the trust) commenced an action against Jola Corp. and Connor Lane Corp., as well as against David, Amy, and David's counsel, asserting breach of contract and tortious interference with contract, and seeking declaratory relief (action No. 2; hereinafter the contract action). The trust claimed that Joseph had made loans to Jola Corp. in 2002 through 2007 and that, despite a loan agreement entered into in November 2007 and signed by David as president of Jola Corp. (hereinafter the loan agreement), the loans were never repaid. The complaint further alleged that the loan agreement was secured by David's interest in Connor Lane Corp. Following Joseph's death in 2010, Susan Ann Stark, as administratrix of Joseph's estate (hereinafter the estate), was substituted as a plaintiff in the contract action.

The divorce action and the contract action were joined for trial. At the joint trial, the Supreme Court first heard testimony relating to the contract action, followed by testimony relating to the divorce action, including expert testimony as to the valuation of Jola Corp. In its decision after trial, the court concluded that it would dismiss the contract action, based on its finding that the plaintiffs failed to satisfy their burden of establishing the existence of a contract, and would issue a declaration that the plaintiffs had no security interest in the commercial property.

With respect to the divorce action, the Supreme Court awarded Amy maintenance for a period of seven years and eq-

uitably distributed the marital property. The court thereafter granted Amy's motion pursuant to CPLR 4404 (b) to modify certain provisions of the decision and, based on a corrected finding as to her annual income, increased the amount of maintenance to be awarded. A judgment of divorce was entered on April 11, 2012, and, following a motion by Amy pursuant to CPLR 5019, the Supreme Court issued a resettled judgment of divorce entered May 13, 2013. Meanwhile, a judgment dated February 10, 2012, was issued in the contract action declaring that the plaintiffs have no security interest in the commercial property or funds received, and dismissing the remaining causes of action.

On appeal, David challenges the Supreme Court's determination in the divorce action with respect to the amount and duration of maintenance awarded and the equitable distribution of the marital property, especially as it relates to the valuation of Jola Corp. and a net operating loss carryover claimed by David on his personal income tax returns. David additionally argues that the court's determination failed to properly consider insurance claim checks allegedly converted by Amy, Amy's alleged waste of marital assets in refusing to cooperate in the sale of the couple's Florida condominium, and certain credit card and loan liabilities which he maintains should have been equally divided.

"The trial court is vested with broad discretion in making an equitable distribution of marital property . . . and unless it can be shown that the court improvidently exercised that discretion, its determination should not be disturbed" (*Safi v Safi*, 94 AD3d 737, 737 [2012] [internal quotation marks and citations omitted]; *see Halley-Boyce v Boyce*, 108 AD3d 503, 504 [2013]). " '[T]he amount and duration of maintenance is a matter committed to the sound discretion of the trial court, and every case must be determined on its own unique facts' " (*Giokas v Giokas*, 73 AD3d 688, 688 [2010], quoting *Wortman v Wortman*, 11 AD3d 604, 606 [2004]).

The Supreme Court properly weighed the relevant statutory factors (*see* Domestic Relations Law § 236 [B] [6] [a]) in awarding Amy maintenance in the sum of $3,000 per month for three years, then $2,750 per month for three years, and thereafter $2,500 per month for one year. The duration and amount of the award, combined with Amy's current income from her employment as a nutritionist, affords her an opportunity to become self-supporting (*see Dochter v Dochter*, 118 AD3d 665 [2014]; *Turco v Turco*, 117 AD3d 719 [2014]; *Cusumano v Cusumano*, 96 AD3d 988 [2012]; *Golden v Golden*, 98 AD3d 647 [2012]).

"There is no uniform rule for fixing the value of a business for the purpose of equitable distribution. Valuation is an exercise properly within the fact-finding power of the trial court, guided by expert testimony" (*Wasserman v Wasserman*, 66 AD3d 880, 882 [2009]; *see Burns v Burns*, 84 NY2d 369, 375 [1994]; *Cusumano v Cusumano*, 96 AD3d 988 [2012]; *L'Esperance v L'Esperance*, 243 AD2d 446 [1997]). "The determination of the factfinder as to the value of a business, if within the range of the testimony presented, will be accorded deference on appeal if it rests primarily on the credibility of expert witnesses and their valuation techniques" (*Wasserman v Wasserman*, 66 AD3d at 882; *see Cooper v Cooper*, 84 AD3d 854 [2011]; *Peritore v Peritore*, 66 AD3d 750 [2009]).

On this record, no basis exists to disturb the Supreme Court's finding as to the valuation of David's interest in Jola Corp. (*see Peritore v Peritore*, 66 AD3d at 750; *Sieger v Sieger*, 51 AD3d 1004 [2008]; *Ivani v Ivani*, 303 AD2d 639 [2003]; *Rosenberg v Rosenberg*, 155 AD2d 428 [1989]).

Contrary to David's contention, the Supreme Court's determination to award Amy a credit in the sum of $43,201.78 based on the net operating loss carryover of $514,307 claimed by David on his 2009 tax return from the sale of Jola Corp. and an effective tax rate of 28% is supported by the evidence. As the Court of Appeals has made clear, "[a] party to litigation may not take a position contrary to a position taken in an income tax return" (*Mahoney-Buntzman v Buntzman*, 12 NY3d 415, 422 [2009]; *see Livathinos v Vaughan*, 121 AD3d 485 [2014]). In addition, the record supports the court's decision to deem David's annual income to be $125,000 "based on actual and imputed sources" (*see Turco v Turco*, 117 AD3d at 722-723; *Maggi v Maggi*, 303 AD2d 650 [2003]; *cf. Rosenberg v Rosenberg*, 44 AD3d 1022 [2007]).

During the pendency of the divorce action, David, through Connor Lane Corp., sold the commercial property to a third-party purchaser for $1,575,000, and took back a purchase money mortgage payable in monthly installments of $11,325.24. As a consequence, the parties entered into a stipulation agreeing, inter alia, that 50% of the net sale proceeds would be held in escrow. When the third-party purchaser subsequently defaulted on the mortgage, Connor Lane Corp. commenced an action to foreclose the mortgage. While the foreclosure action was pending, the Supreme Court conducted a trial with respect to Amy's and David's equitable distribution claims. The court determined that Amy was entitled to 25% of the net proceeds of any prospective foreclosure sale, based on its conclusion that

the marital portion of the total net proceeds was 50%, and that Amy was entitled to 50% of that amount. The judgment of divorce entered April 17, 2012, directed, in relevant part, that the parties "share equally in the net proceeds of any prospective foreclosure sale" of the commercial property.

Meanwhile, after Connor Lane Corp. made a successful bid of $500 for the commercial property at the foreclosure sale that took place in February 2012, David delivered to Amy a check in the sum of $125, representing her share of the net sale proceeds from the foreclosure sale. Amy, in turn, moved pursuant to CPLR 5019 to resettle the judgment of divorce to conform with the Supreme Court's decision that Amy was entitled to receive 50% of the marital portion of the total net proceeds from the sale of the commercial property, so as to include a provision that such sale arise from an arm's length, good faith transaction for fair value. Amy also sought a preliminary injunction directing that such proceeds be held in escrow. The court granted that branch of the motion which was to resettle the judgment, but did not grant the ultimate relief requested, and denied the preliminary injunction request.

The Supreme Court should have amended the divorce judgment with respect to Amy's interest in the commercial property in order to effect the clear intent of the court and the parties as expressed at the trial resolving issues of equitable distribution (see CPLR 5019 [a]; Sommers v Sommers, 25 AD3d 685 [2006]; Siegel, NY Prac § 420 [5th ed 2011]). Under these circumstances, Amy was also entitled to the requested preliminary injunctive relief (see generally Reichman v Reichman, 88 AD3d 680 [2011])

David's remaining contentions are without merit.

On their appeal from the judgment entered February 10, 2012, in the contract action, the estate and the trust (hereinafter together the estate plaintiffs) principally argue that the loan agreement was a valid contract and there existed an enforceable security interest in the real estate holdings of Connor Lane Corp. The estate plaintiffs also contend that the Supreme Court improperly dismissed the cause of action asserted against Amy for tortious interference with a contract.

"Generally, a party alleging a breach of contract must 'demonstrate the existence of a . . . contract reflecting the terms and conditions of their . . . purported agreement' " (Mandarin Trading Ltd. v Wildenstein, 16 NY3d 173, 181-182 [2011], quoting American-European Art Assoc. v Trend Galleries, 227 AD2d 170, 171 [1996]; see Canzona v Atanasio, 118 AD3d 837, 838-839 [2014]). "It is axiomatic that '[w]ithout [an] agreement . . .

there can be no contract [and] [w]ithout a contract there can be no breach of the agreement' " (*Schaffe v SimmsParris*, 82 AD3d 867, 868 [2011], quoting *Franklin v Carpinello Oil Co.*, 84 AD2d 613, 613 [1981]). The burden of proof is on the party alleging an unpaid loan (*see Siebert v Dermigny*, 60 AD3d 526 [2009]).

Contrary to the contention of the estate plaintiffs, there is no reason to disturb the Supreme Court's determination (*see Siebert v Dermigny*, 60 AD3d at 526; *Milnes v Milnes*, 50 AD3d 750 [2008]). Check No. 1220, dated August 5, 2002, contains no notation that it was a loan, and does not otherwise indicate its purpose (*see Schaffe v SimmsParris*, 82 AD3d at 868). The same holds true for check No. 1015, dated December 10, 2007. David, who drafted the loan agreement and conceded that it was in his own financial interest to have the loans repaid, offered only conclusory testimony that the sums were used to cover Jola Corp.'s operating expenses (*see Skiadas v Terovolas* 219 AD2d 635 [1995]; *cf. Levine v Levine*, 24 AD3d 625 [2005]). Inasmuch as the estate plaintiffs failed to satisfy their burden of demonstrating the existence of a valid loan agreement, the provision therein giving a security interest in David's interest in the commercial property was without effect. Similarly, the cause of action to recover damages for tortious interference with a contract was properly dismissed for failure to establish the existence of a valid contract (*see Robert Wayne Distribs. v Noonan*, 204 AD2d 421 [1994]).

The estate plaintiffs' remaining contentions are without merit. Mastro, J.P., Roman, Sgroi and Barros, JJ., concur.