Lieberman-Massoni v Massoni (2023 NY Slip Op 01786)

Lieberman-Massoni v Massoni

2023 NY Slip Op 01786

Decided on April 5, 2023

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on April 5, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

COLLEEN D. DUFFY, J.P.
ANGELA G. IANNACCI
REINALDO E. RIVERA
JOSEPH A. ZAYAS, JJ.

2019-02938
 (Index No. 2175/12)

[*1]Stacee Lieberman-Massoni, appellant-respondent,
v
John Massoni, respondent-appellant.

Hasapidis Law Offices, South Salem, NY (Annette G. Hasapidis of counsel), for appellant-respondent.
Joseph R. Miano, White Plains, NY, for respondent-appellant.

DECISION & ORDER
In an action for a divorce and ancillary relief, the plaintiff appeals, and the defendant cross-appeals, from stated portions of a judgment of divorce of the Supreme Court, Westchester County (Gretchen Walsh, J.), dated December 21, 2018. The judgment of divorce, insofar as appealed from, upon a decision of the same court dated October 5, 2018, made after a nonjury trial, inter alia, awarded the plaintiff a percentage of the value of the defendant's shares in a certain company. The judgment of divorce, insofar as cross-appealed from, among other things, directed the defendant to pay 70% of the plaintiff's reasonable and necessary attorney's fees and expert fees.
ORDERED that the judgment of divorce is modified, on the law and the facts, by deleting the provision thereof awarding the plaintiff the sum of $5,000 from "the New York safe," and substituting therefor a provision awarding the plaintiff the sum of $5,000 from the New York safe and $5,000 from the defendant's safe in Los Angeles; as so modified, the judgment is affirmed insofar as appealed and cross-appealed from, without costs or disbursements.
The parties were married on August 31, 1997, and have two children. In February 2012, the plaintiff commenced this action for a divorce and ancillary relief. A trial on the issues of equitable distribution, maintenance, and child support commenced in June 2014 (hereinafter the first trial). Evidence at the first trial showed that the defendant, a high-ranking executive at his corporate employer, had received several grants of shares in the company, called B-Units, throughout his employment. The parties' neutral appraiser, Steven Kaplan, testified that the value of the defendant's B-Units as of the date of commencement of this action was $1,126,000, based upon a formula value set forth in the employer's operating agreement and a discount for lack of marketability and control. The defendant testified that the business as of the time of trial was "horrendous." However, approximately two weeks after the close of the first trial, the plaintiff discovered that the defendant's corporate employer had sold one of its divisions for a significant sum, which yielded the defendant a distribution of more than $8 million, based upon his B-Units. The plaintiff moved, inter alia, to reopen the trial. In an order dated December 4, 2014 (hereinafter the December 2014 order), the Supreme Court, among other things, granted that branch of the motion. The court also reopened discovery. The defendant appealed the December 2014 order, which this Court affirmed (see Lieberman-Massoni v Massoni, 146 AD3d 869).
The new trial was held in September 2017 (hereinafter the second trial). The Supreme Court issued a decision after trial dated October 5, 2018 (hereinafter the October 2018 trial decision). A judgment of divorce dated December 21, 2018, was entered upon the October 2018 trial decision. The plaintiff appeals, and the defendant cross-appeals, from stated portions of the judgment of divorce.
"'Equitable distribution presents issues of fact to be resolved by the trial court and should not be disturbed on appeal unless shown to be an improvident exercise of discretion'" (Kattan v Kattan, 202 AD3d 771, 773, quoting Santamaria v Santamaria, 177 AD3d 802, 804 [internal quotation marks omitted]). The Supreme Court has "broad discretion in selecting the dates for the valuation of marital assets and, depending on the particular circumstances of the case, may appropriately fix different valuation dates for different assets" (Pappas v Pappas, 140 AD3d 838, 840). "'Courts have discretion to value "active assets" such as a professional practice on the commencement date [of the action], while "passive assets" such as securities, which could change in value suddenly based on market fluctuations, may be valued at the date of trial' but such formulation should be treated as helpful guideposts and not immutable rules" (Daniel v Friedman, 22 AD3d 707, 708, quoting Grunfeld v Grunfeld, 94 NY2d 696, 707). Here, the Supreme Court providently exercised its discretion in determining that the defendant's B-Units that were granted before 2015 should be valued as of June 2017, immediately prior to the second trial (see Mahoney-Buntzman v Buntzman, 12 NY3d 415, 422), but that the plaintiff should be awarded only a percentage of the value of the B-Units as of that date, not a percentage of the B-Units themselves (see e.g. Katz v Katz, 153 AD3d 912, 914; Sutaria v Sutaria, 123 AD3d 909, 910). Although the defendant was a high-ranking executive at his corporate employer, the court correctly determined that the value of these B-Units was not solely attributable to his actions (see Mahoney-Buntzman v Buntzman, 12 NY3d at 422; Wegman v Wegman, 123 AD2d 220, 237). The court providently exercised its discretion, based on equitable and other considerations, to set the valuation date as of June 2017 (see Domino v Domino, 115 AD3d 906; Daniel v Friedman, 22 AD3d at 708), rather than at the commencement of this action.
"Whether marital property shall be distributed or a distributive award shall be made in lieu of, or to supplement, facilitate or effectuate a distribution of marital property are matters committed by section 236 (part B, subd 5) of the Domestic Relations Law to the discretion of the Trial Judge in the first instance" (Majauskas v Majauskas, 61 NY2d 481, 493). Here, contrary to the plaintiff's contention, the Supreme Court did not improvidently exercise its discretion in awarding the plaintiff a percentage of the value of the defendant's B-Units rather than a percentage of the B-units themselves as the record did not demonstrate that the distribution of the B-Units in-kind by transferring a percentage of the B-Units to her, by assigning a percentage of the interest to her, or by distributing a percentage of the defendant's future distributions to her would be practicable and not unduly burdensome (see e.g. id. at 485; Repetti v Repetti, 147 AD3d 1094, 1099). The court's determination that the plaintiff should not share in future distributions, nor benefit in any value increases of the B-Units subsequent to June 2017, was a provident exercise of discretion in light of the defendant's promotion in 2015 which provided him a more active role in the operation of his corporate employer (see e.g. Trivedi v Trivedi, 222 AD2d 499, 499).
Nor did the Supreme Court improvidently exercise its discretion in crediting the defendant's expert valuation of the B-Units over the valuation of the plaintiff's experts. "The valuation of a marital asset must be founded in economic reality" (Sheehan v Sheehan, 161 AD3d 912, 914), and "[t]he determination of the value of business interests is a function properly within the fact-finding power of the court" (Daddino v Daddino, 37 AD3d 518, 519). "However, '[t]here is no uniform rule for fixing the value of a business for the purpose of equitable distribution. Valuation is an exercise properly within the fact-finding power of the trial court, guided by expert testimony. The determination of the factfinder as to the value of a business, if within the range of the testimony presented, will be accorded deference on appeal if it rests primarily on the credibility of expert witnesses and their valuation techniques'" (Davenport v Davenport, 199 AD3d 637, 640, quoting Wasserman v Wasserman, 66 AD3d 880, 882). Since the plaintiff's experts failed to discount the valuation of the B-Units based upon a lack of marketability and control (see Nadasi v Nadel-Nadasi, 153 AD3d 1346, 1349), the court did not improvidently exercise its discretion in [*2]adopting the valuation of the defendant's expert. Further, the court did not improvidently exercise its discretion in determining that the formula value testified to by the defendant's expert more closely approximated the fair market value of the defendant's B-Units than the value based upon a potential sale of the company, where there was no evidence that the sale of the corporate employer was imminent.
"Although in a marriage of long duration, where both parties have made significant contributions to the marriage, a division of marital assets should be made as equal as possible, there is no requirement that the distribution of each item of marital property be made on an equal basis" (Chalif v Chalif, 298 AD2d 348, 349 [citation omitted]; see Repetti v Repetti, 147 AD3d at 1098). "The distribution of marital assets depends not only on the financial contribution of the parties 'but also on a wide range of nonremunerated services to the joint enterprise, such as homemaking, raising children and providing the emotional and moral support necessary to sustain the other spouse in coping with the vicissitudes of life outside the home'" (K. v B., 13 AD3d 12, 17, quoting Brennan v Brennan, 103 AD2d 48, 52). Here, considering the plaintiff's substantial indirect contributions to the defendant's business, including caring for the parties' children and maintaining the parties' residence in New York while the defendant worked for the majority of the time in Los Angeles, the Supreme Court providently exercised its discretion in awarding the plaintiff 35% of the value of the defendant's B-Units as of the date of commencement of the second trial, as well as 35% of the defendant's distribution from the 2014 sale of one of the divisions of the defendant's corporate employer (see Kattan v Kattan, 202 AD3d 771; Klestadt v Klestadt, 182 AD3d 592, 594).
Contrary to the plaintiff's contention, the Supreme Court also providently exercised its discretion in determining that certain other B-Units that the defendant was granted in 2015 were his separate property. "Bonus payments, though paid after commencement of a matrimonial action, may be viewed as marital property where such payments are compensation for past performance and are not tied to future performance. However, where a bonus is an incentive for future services to be rendered after commencement of an action, the bonus is separate property" (Kaufman v Kaufman, 189 AD3d 31, 63 [citations omitted]). Here, the evidence showed that the B-Units granted to the defendant in 2015, three years after the commencement of this action, were an incentive for future performance, not compensation for work done during the marriage.
The Child Support Standards Act (hereinafter CSSA) "sets forth a formula for calculating child support by applying a designated statutory percentage, based upon the number of children to be supported, to combined parental income up to the statutory cap that is in effect at the time of the judgment" (McCoy v McCoy, 107 AD3d 857, 858). "With respect to combined parental income exceeding that amount, the court has the discretion to apply the statutory child support percentage or to apply the factors set forth in Domestic Relations Law § 240(1-b)(f), or to utilize some combination of those two methods" (Matter of Fanelli v Orticelli, 170 AD3d 831, 832 [citation omitted]). "The hearing court must 'articulate its reason or reasons for [that determination], which should reflect a careful consideration of the stated basis for its exercise of discretion, the parties' circumstances, and its reasoning why there [should or] should not be a departure from the prescribed percentage'" (id. at 832, quoting Wagner v Dunetz, 299 AD2d 347, 350-351 [internal quotation marks omitted]). Here, the Supreme Court articulated its reasons for determining that a $400,000 parental income cap was appropriate as detailed in the October 2018 trial decision.
Contrary to the plaintiff's contention, the Supreme Court providently exercised its discretion in determining the defendant's income for child support purposes. "In calculating a party's income pursuant to the CSSA, a court . . . may impute income based upon various factors, including automobiles or other perquisites that are provided as part of compensation for employment, and fringe benefits provided as part of compensation for employment" (Matter of Geller v Geller, 133 AD3d 599, 600 [internal quotation marks omitted]). However, the Supreme Court "'is afforded considerable discretion in determining whether to impute income to a parent'" (Morille-Hinds v Hinds, 169 AD3d 896, 899, quoting Filippazzo v Filippazzo, 121 AD3d 835, 836). Here, contrary to the plaintiff's contention, the court did not improvidently exercise its discretion in declining to impute as income the cost of the apartment that the defendant's corporate employer maintained for [*3]him in Los Angeles. The defendant testified at the second trial that he was again traveling there for business on a regular basis (see Morille-Hinds v Hinds, 168 AD3d at 899).
"Where . . . a party has paid the other party's share of what proves to be marital debt, such as the mortgage, taxes, and insurance on the marital residence, reimbursement is required" (Morales v Carvajal, 153 AD3d 514, 515). Although the defendant paid for all of the parties' household expenses out of a joint checking account, it is also undisputed that the defendant funded the account with post-commencement earnings. Further, the plaintiff's spending during the pendency of the action, which far exceeded the parties' agreed-to "pre-commencement standard of living," had nearly depleted all of the parties' joint accounts. Accordingly, the Supreme Court did not improvidently exercise its discretion when it awarded the defendant a credit of 50% of the reduction in the mortgage principal made during the pendency of the action (see Westbrook v Westbrook, 164 AD3d 939, 944).
With respect to the cash contained in two safes maintained by the defendant, the Supreme Court should have awarded the plaintiff $5,000 of the cash that was secured in a safe in Los Angeles, as well as the $5,000 that was awarded to the plaintiff that was secured by the defendant in a safe in New York. At the second trial, the defendant testified that he had deposited all but $10,000 from his safe in Los Angeles back into the parties' joint account, which testimony the court credited. However, the court did not address that remaining $10,000 in the safe in Los Angeles. Thus, the plaintiff should have been awarded a distributive award of $5,000 for the cash held in the Los Angeles safe, in addition to the distributive award of $5,000 for the cash held in the New York safe.
"'The decision to award an attorney's fee in a matrimonial action lies, in the first instance, in the discretion of the trial court and then in the Appellate Division whose discretionary authority is as broad as that of the trial court'" (Klein v Klein, 178 AD3d 802, 805, quoting Black v Black, 140 AD3d 816, 816). "There is a statutory 'rebuttable presumption that counsel fees shall be awarded to the less monied spouse'" (Piccininni v Piccininni, 176 AD3d 880, 881, quoting Domestic Relations Law § 237[a]). The purpose of awarding attorney's fees "is to redress the economic disparity between the monied spouse and the nonmonied spouse by ensuring that the latter will be able to litigate the action on equal footing with the former" (Giasemis v Giasemis, 187 AD3d 718, 719 [internal quotation marks omitted]). "In exercising its discretion, a court should 'review the financial circumstances of both parties together with all the other circumstances of the case, which may include the relative merit of the parties' positions'" (Zehner v Zehner, 186 AD3d 784, 785-786, quoting Duval v Duval, 144 AD3d 739, 743 [internal quotation marks omitted]). "Additionally, the court may also consider whether one party has engaged in conduct or taken positions resulting in a delay of the proceedings or engaged in unnecessary litigation" (Klein v Klein, 178 AD3d at 805). Considering the relative financial circumstances of the parties, including the award of maintenance to the plaintiff and the equitable division of the parties' marital assets, under the circumstances of this case, the Supreme Court providently exercised its discretion in directing the defendant to pay 70% of the plaintiff's reasonable and necessary attorney's fees and expert fees (see e.g. Weiss v Nelson, 196 AD3d 722, 726).
DUFFY, J.P., IANNACCI, RIVERA and ZAYAS, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court